**Sherry Moore NANCE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–90–269–CR.**

Court of Appeals of Texas,
Corpus Christi.

April 11, 1991.

Juan Martinez Gonzales, Beeville, for appellant.

C.F. Moore, Jr., Dist. Atty., Beeville, for appellee.

Before NYE, C.J., and SEERDEN and HINOJOSA, JJ.

## OPINION

SEERDEN, Justice.

A jury found appellant guilty of capital murder and answered special issues on punishment. The trial court entered judgment sentencing her to life in the Texas Department of Criminal Justice, Institutional Division. In twenty points of error, appellant complains about jury selection, the admission of evidence, sufficiency of the evidence, the charge, and prosecutorial

statements. We affirm the trial court's judgment.

The evidence shows that appellant shot and killed her ex-husband, Thomas N. Nance, on Monday, July 3, 1989. In June, the victim had divorced her and was awarded custody of their son, Thomas O. Nance. Evidence shows that the divorce was bitter, that appellant contended that her husband had sexually abused their son, and that the Bee County jury awarded the son to his father. The jury let appellant keep the child until the Monday following their decision, which was June 26, but appellant made new claims and gave the child to the Department of Human Services (DHS) in Victoria. On June 29, DHS released the child to Thomas M. and Nelda Nance, the child's grandparents. They and the child's father took him to visit the child's aunt in Pittsburg, Texas, but after phone calls from appellant, the whole family returned to the Beeville area.

On the day of the shooting, appellant went to the victim's parents' farm, where Thomas N., his sister, Brenda Parr, his parents, Thomas·M. and Nelda Nance, and Thomas O. were. A gun battle in the house left Thomas N. dead, Thomas M. paralyzed, Brenda wounded, and appellant seriously wounded. The battle ended with Brenda and Nelda sitting on appellant.

Evidence offered by the State shows that Thomas M. encountered appellant after noticing her bag by his tractor. She held a gun on him and used him as a shield to approach the house (thus kidnapping him), and made him help her enter. When he broke through the boarded door, he stepped in and came face to face with his son, Thomas N., at whom appellant then fired. The charge required the jury to find that appellant intentionally killed Thomas N. with a handgun while committing or attempting to commit kidnapping or aggravated kidnapping of Thomas M.

By appellant's account, she parked on a back road to hide her car, walked two miles through a pasture, and hid in a barn, hoping to seize and abduct her son. She said that later, after moving to a tractor shed, she saw her ex-husband get a gun from his parents' car and load it. She then loaded her gun, because she "knew by him going out and getting his gun that he intended to shoot me if he saw me." As she was loading her gun, Thomas N.'s father, Thomas M. Nance, approached, and she hid, but left her ammunition bag by the tractor wheel. When he picked it up, she asked him to hand it to her, asked to talk to her ex-husband, and said if he didn't let her she would persist in her claim that her ex-husband molested their son, Thomas O. She said he appeared angry. She said the gun was in her hand but she stuck it in her bag, and that Thomas M. told her that Thomas N. knew she was there and she would never leave alive. She walked to the house behind him because she was afraid of him, and she also feared being shot through a window. She said Thomas M. tried to get in at the front, and then the side, but the doors were locked. He tried to kick the side door in, then she shot at the lock ineffectively, and then she asked him to try again. Then she said she was shot in the chest. She said she looked at her ex-father-in-law, Thomas M., and said, "The son of a bitch shot me," then looked up at the door and saw Thomas N. and his gun and started shooting. She said after it appeared that Thomas N. jumped away for cover, Thomas M. rushed in the door, and that she jumped to shut the door. She said she thought Thomas N. was hiding ready to shoot again, and knelt to reload her gun on the steps, then jumped in and fired.

▪ Appellant complains of the charge by points one, two, four, five, six, and seven. When an appellant claims jury charge error, the appellate court must determine whether the charge was erroneous, and if so, whether the error harmed the accused. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984). The charge should instruct the jury on the law applicable to every theory within the scope of the indictment which the evidence will support, whether favorable to the State or to the accused. *Garcia v. State*, 791 S.W.2d 279, 281 (Tex.App.—Corpus Christi 1990, pet. ref'd); *Goodwin v. State*, 694 S.W.2d 19, 27 (Tex.App.—Corpus Christi

1985, pet. ref'd), *appeal after remand*, 725 S.W.2d 314 (Tex.App.—Corpus Christi 1986, no pet.). The trial court is not required to charge on an issue the evidence does not raise. *Mora v. State*, 797 S.W.2d 209, 211 (Tex.App.—Corpus Christi 1990, pet. ref'd); *Banks v. State*, 624 S.W.2d 762, 765 (Tex.App.—Houston [14th Dist.] 1981), *rev'd on other grounds*, 656 S.W.2d 446 (Tex.Crim.App.1983).

■■■ We use a two-step analysis to determine whether a trial court erred in failing to submit a charge on a lesser included offense. First, the lesser included offense must be included within the proof necessary to establish the charged offense. Second, some evidence must show that if the defendant is guilty, she is guilty only of the lesser included offense. *See Lugo v. State*, 667 S.W.2d 144, 146 (Tex.Crim.App.1984). A charge on a lesser included offense is not required unless the evidence raises the issue that, if guilty, a defendant is guilty only of the lesser offense. *Creel v. State*, 754 S.W.2d 205, 210 (Tex.Crim.App.1988); *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex. Crim.App.1985); *see Sattiewhite v. State*, 786 S.W.2d 271, 288 (Tex.Crim.App.1989).

By point one, appellant cites as error the trial court's refusal to give a voluntary manslaughter charge, and by point two, she claims that this omission shifted the burden of proof in violation of the U.S. and Texas Constitutions. By point five, appellant argues that the trial court erred in not defining "voluntary manslaughter," "sudden passion," and "adequate cause" in the charge.

■■■ Tex.Penal Code Ann. § 19.04(a) (Vernon 1974) defines voluntary manslaughter as causing the death of an individual under circumstances that would constitute murder under § 19.02, except that the actor "caused the death under the immediate influence of sudden passion arising from an adequate cause." An instruction on the offense of murder is fundamentally defective if it fails to properly place the burden of proof on the State to disprove sudden passion when a defendant is charged with murder and entitled to a jury instruction on voluntary manslaughter.

*Shanks v. State*, 710 S.W.2d 585, 586 (Tex. Crim.App.1986); *Owens v. State*, 786 S.W.2d 805, 808 (Tex.App.—Fort Worth 1990, pet. ref'd); *see Saxton v. State*, 804 S.W.2d 910, 913 (Tex.Crim.App.1991).

■■■ To show entitlement to a voluntary manslaughter charge, appellant must establish that some evidence showed that she was guilty only of voluntary manslaughter. She cites evidence of her belief that Thomas N., the victim, had sexually assaulted their son, Thomas O. She further recites evidence that when she learned that Child Protective Services had released the son to her in-laws, she went to the farm near Beeville to try to kidnap him, on the advice of an attorney. She testified that no one was at the farm, that she made frantic phone calls, that she learned that the in-laws and Thomas N. had taken the child to Pittsburg, Texas, where the victim's sister lived, that appellant tried to get Child Protective Services to take the child from its father, and that she finally became hysterical and trashed the farm house, even firing a shot in it. She testified that she tried to drive to Pittsburg, had car trouble in San Antonio, rented a car and had a wreck near Tyler, called Pittsburg, and found out that the family had returned to Beeville. She then took a bus to San Antonio, picked up her car, and drove to Beeville. She also testified to the events at the farm as described above. She testified that she was in fear of the victim, and portrays the events of the several days as a continuum during which she was angry, afraid, upset, and even hysterical.

■■■ The statute allows the *immediate* influence of *sudden* passion, if arising from an adequate cause, to mitigate the severity of the crime. Tex.Penal Code Ann. § 19.04(c) (Vernon 1974) defines adequate cause as "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." Not all testimony of anger or fear entitles a defendant to a voluntary manslaughter charge. *See, e.g., Owens*, 786 S.W.2d at 808; *Miller v. State*,

753 S.W.2d 473, 476 (Tex.App.—Austin 1988, pet. ref'd).

▬▬▬ Tex.Penal Code Ann. § 19.04(b) (Vernon 1974) defines sudden passion as "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." The sudden passion must be directly caused by and arising out of provocation by the deceased at the time of the offense. Passion solely the result of former provocation is insufficient. *Marras v. State*, 741 S.W.2d 395, 405 (Tex.Crim.App. 1987); *Hobson v. State*, 644 S.W.2d 473, 478 (Tex.Crim.App.1983). Evidence that a defendant was enraged or terrified before acting does not mandate a voluntary manslaughter charge unless evidence also shows that the emotions resulted from provocation at the time of the offense. *Marquez v. State*, 725 S.W.2d 217, 224 (Tex.Crim.App.1987), *cert. denied*, 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987); *see Zepeda v. State*, 797 S.W.2d 258, 265 (Tex.App.—Corpus Christi 1990, pet. ref'd).

▬▬▬ Viewing the evidence most favorably to the defense, we find no showing of immediate provocation. The event appellant claims inflamed her, her discovery of the return of the son she believed her ex-husband habitually sexually abused, to custody of her ex-husband and his family, took place long before appellant arrived at the farm, even by her account. We find no showing of any new information, evidence, or perceptions about her son after arriving at the farm. Rather, all of the evidence points to longstanding hostility between the parties. *See Williams v. State*, 768 S.W.2d 337, 339–40 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd).

▬▬▬ Additionally, when a defendant creates the circumstances which instigate the inflaming of that defendant's passions, particularly when a defendant is an aggressor, the precipitator of a confrontation, or attempting to commit a crime when allegedly inflamed by another's response, a charge on voluntary manslaughter is not required. *See Harris v. State*, 784 S.W.2d

5, 10 (Tex.Crim.App.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1837, 108 L.Ed.2d 966 (1990); *Lincecum v. State*, 736 S.W.2d 673, 679 (Tex.Crim.App.1987), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2835, 100 L.Ed.2d 936 (1988); *Villegas v. State*, 791 S.W.2d 226, 239 (Tex.App.—Corpus Christi 1990, pet. ref'd). Here, appellant knew she was unwelcome and said she considered herself to be in danger on the farm; yet, she entered. She admitted her intent to kidnap her son. According to her testimony, she was armed and demanded a confrontation with the victim before any shooting occurred. She said she was shot before she entered the house, yet she entered, and did not testify to any attempt to retreat at any time.

A reading of appellant's testimony in light of *Gonzales v. State*, 717 S.W.2d 355, 356–57 (Tex.Crim.App.1986), *on remand*, 730 S.W.2d 196 (Tex.App.—San Antonio 1987, no pet.) would show that appellant anticipated the event and prepared herself to respond to the occasion, demonstrating cool reflection throughout the incident.

Thus, appellant was not entitled to a charge on voluntary manslaughter or to having definitions of "voluntary manslaughter," "sudden passion," and "adequate cause" in the charge. We overrule points one and five. Since appellant was not entitled to the charge, its omission did not shift any burdens of proof. We overrule point two.

▬▬▬ By point fourteen, which she frames as a challenge to the sufficiency of the evidence, appellant claims that she should be acquitted, arguing that the State did not prove mens rea because it did not prove beyond a reasonable doubt that she was not under the influence of sudden passion at the time of the offense. When reviewing the sufficiency of the evidence, we examine all the evidence in the light most favorable to the verdict or the judgment and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App.1989). Generally, the jury is the exclusive judge of the facts,

the credibility of the witnesses, and the weight to be given to their testimony. *Bonham v. State,* 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985).

Circumstantial evidence is generally relied on, and is sufficient to prove a required culpable mental state. *Dillon v. State,* 574 S.W.2d 92, 94 (Tex.Crim.App. 1978); *Sterling v. State,* 791 S.W.2d 274, 277 (Tex.App.—Corpus Christi 1990, pet. ref'd); *Kohler v. State,* 713 S.W.2d 141, 144 (Tex.App.—Corpus Christi 1986, pet. ref'd). Direct and circumstantial evidence are equally probative for proving guilt beyond a reasonable doubt. *Hankins v. State,* 646 S.W.2d 191, 199 (Tex.Crim.App. 1983). With circumstantial proof, every fact need not point directly and independently to the defendant's guilt; rather, the combined and cumulative force of all incriminating circumstances warrants the jury's conclusion. *Livingston v. State,* 739 S.W.2d 311, 330 (Tex.Crim.App.1987), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988); *Mora,* 797 S.W.2d at 212–13. If, after viewing the evidence in the light most favorable to the verdict or judgment, no other outstanding reasonable hypothesis remains, we find the evidence sufficient to support the conviction. *Livingston,* 739 S.W.2d at 330; *Mora,* 797 S.W.2d at 213.

As explained in our discussion above, none of the evidence showed that appellant was under the influence of sudden passion arising from an adequate cause at the time of the shooting. Evidence of appellant's state of mind includes Thomas M.'s testimony that when appellant confronted him outside the house on July 3, her emotional state was "sort of mean like." He described her as cool and purposeful rather than excited or agitated. Ellis Ginn, the State Trooper who appeared at the scene first after the shootings and found Brenda and Nelda restraining appellant, described appellant as cold, calculated, calm, and emotionless.

Evidence showed longstanding animosity and additional anger over the recent custody decision. Jim Short, a friend of Thomas N. and appellant during their marriage, testified that after the separation, he attempted to aid reconciliation three or four times, but appellant made threats against her ex-husband and his parents. He testified that she said she would see him dead before he got anything, and that she could kill the family and get away with it and plead insanity. He also testified she said, "As long as I have Thomas [her son], I have them by the balls." Short testified that some of appellant's threats were made before the separation, that they were ongoing, and that he informed an attorney because he thought the threats were serious.

Neighbors Yates and Novella Johnson testified that on July 1, Thomas N. called to ask them to see if Sherry was at the ranch house. Yates testified that he did not want to go to the house without law enforcement because appellant had threatened the Nance family. They drove to a T in the road to wait for a sheriff to accompany them, and appellant pulled up in a car. Yates testified that she sprayed him with Mace and ordered him to move his truck, even though it was not blocking the road. She said, "Well, they took my child and you helped them do it." Novella testified that she saw appellant Mace her husband Yates, blinding him, and that appellant then got a gun from her car and pointed it at her (Novella) and said, "Get out of my way."

Appellant attempted to portray the victim as dominant and abusive of her, alleging physical abuse and an anal rape. The State produced rebuttal witnesses who said that appellant beat the victim, and that appellant was dominant in the relationship. Thomas M. testified that appellant was the dominant personality in the relationship between Thomas N. and appellant. He described her attitude as overbearing and hostile, and described a physical confrontation they had in 1987.

Appellant admitted she had made statements that she did not care if her in-laws lived or died, and that she had left a note for Thomas N., "From now on you don't know what misery is." Appellant bought the gun and ammunition on Friday and pursued the family until the Monday shoot-

ings. The evidence supports a conclusion that appellant's acts were premeditated and purposeful, rather than a result of sudden passion. We overrule point fourteen.

█ By point four, appellant claims that the trial court erred in not giving a charge on defense of a third person, Tex. Penal Code Ann. § 9.33 (Vernon 1974), and by point six, she complains of the failure to charge the statutory definition in Tex.Penal Code Ann. § 9.32 (Vernon Supp.1991), which sets out circumstances justifying the use of deadly force in defense of a person. Under Tex.Penal Code Ann. § 9.32(3)(B), a person may be justified in using deadly force against another to prevent that other's *"imminent* commission of aggravated kidnapping, murder, sexual assault, robbery, or aggravated robbery." (emphasis added). Appellant claims that evidence shows her acts justified because she was attempting to protect Thomas O. from sexual assault by Thomas N.

█ A trial court may refuse an instruction on a defensive theory if the evidence is not sufficient to raise the issue. *Carrillo v. State,* 591 S.W.2d 876, 891 (Tex. Crim.App.1979). One requirement for the defense of third persons is that the defendant believe his action is *immediately* necessary to protect the third person. *McDonald v. State,* 597 S.W.2d 365, 367 (Tex. Crim.App.), *cert. denied,* 449 U.S. 1010, 101 S.Ct. 564, 66 L.Ed.2d 467 (1980). If the evidence does not raise the issue of immediate danger to the third person, the trial court may properly refuse a charge on defense of a third person. *See McDonald,* 597 S.W.2d at 367; *Brooks v. State,* 548 S.W.2d 680, 684 (Tex.Crim.App.1977).

None of the evidence suggests that at the time appellant shot Thomas N., it was immediately necessary to prevent sexual assault on her son. The evidence shows that the son was in another room with his aunt when appellant shot Thomas N., and her own testimony indicates when she entered the house, she did not believe that the son was on the premises. We overrule points four and six.

█ Appellant's seventh point asserts that the trial court's charge on the law of self-defense was improper. Specifically, she complains of the inclusion of the language in the charge that relates to self-defense, "if you find from the evidence beyond a reasonable doubt that SHERRY MOORE NANCE was in the course of committing aggravated kidnapping of Thomas M. Nance, then she is not entitled to rely upon self-defense." Appellant claims it is a misstatement of the law and a comment on the weight of the evidence.

Tex.Penal Code Ann. § 9.31(b) (Vernon 1974) provides that the use of force against another is not justified if the actor provoked the other's use of unlawful force. Further, Tex.Penal Code Ann. § 9.32(3)(B) (Vernon Supp.1991) allows deadly force, to the extent the actor believes it is immediately necessary, to prevent aggravated kidnapping.

In *Evans v. State,* 601 S.W.2d 943, 946 (Tex.Crim.App.1980), the Court of Criminal Appeals said that the defendant was not entitled to a self-defense issue in the charge for shooting a store manager when he entered the store with intent to commit robbery, citing *Davis v. State,* 597 S.W.2d 358, 361 (Tex.Crim.App.1980). In *Davis,* the Court of Criminal Appeals quoted a prior case, *Dickson v. State,* 463 S.W.2d 20, 23 (Tex.Crim.App.1971), that a robber has no right of self-defense when an owner is trying to prevent the robbery, and concluded that the reason the robber shot the store owner was not relevant to the robber's guilt for the owner's death. Under current law, the same reasoning applies to kidnappers who shoot those interfering with commission of that crime.

Thus, if Thomas N. believed it was immediately necessary to prevent aggravated kidnapping of Thomas M., he could fire at appellant. If appellant was committing aggravated kidnapping, she had no right to defend herself against one trying to prevent it. Since some evidence supported that version of events, the trial court did not err in including the instruction. Since the trial court conditioned the instruction on a finding that appellant was committing

aggravated kidnapping, it did not comment on the weight of the evidence. We overrule point seven.

■ By point twenty, appellant claims to have established self-defense as a matter of law. Appellant cites her account by which she was shot first, before she entered the house, apparently through a door with a glass pane in it, Dr. Espinoza's testimony opining that she was shot first and from behind, and evidence that she was severely wounded. She points out that the decedent and his parents had numerous guns, that she feared for her life, and that Thomas M. shot at her after she was in the house. Clearly, two conflicting versions of events emerged at trial. In addition to the evidence previously described, Dr. Rupp recreated a sequence of events from the medical evidence and photographs, concluding that appellant shot the victim before he shot her, and that he did not shoot until she had entered the house and shot him.

■ Self-defense is an affirmative defense, which a defendant must prove by a preponderance of the evidence. *Saxton v. State*, 804 S.W.2d 910, 912 n. 5, 913 n. 7 (Tex.Crim.App.1991); Tex.Penal Code Ann. § 2.04(d) (Vernon 1974). If a defendant successfully raises the issue of self-defense, the State has the burden of persuasion in disproving it. *Saxton*, at 913. The State does not need to produce evidence refuting the self-defense claim, but must prove its case beyond a reasonable doubt. *Saxton*, at 913.

■ Self-defense is a fact issue for the jury. *Saxton*, at 913; *Jenkins v. State*, 740 S.W.2d 435, 438 (Tex.Crim.App. 1983). A jury, sitting as the trier of fact, may accept or reject any or all of the testimony adduced. *Johnson v. State*, 673 S.W.2d 190, 196 (Tex.Crim.App.1984); *Westfall v. State*, 663 S.W.2d 664, 666 (Tex. App.—Corpus Christi 1983, pet. ref'd). We will reverse only for a failure of proof on one or more elements of the offense. *O'Campo v. State*, 647 S.W.2d 708, 709 (Tex.App.—Corpus Christi 1982, pet. ref'd untimely filed). Appellate courts view the facts of the case in the light most favorable to the verdict. *Vasquez v. State*, 665

S.W.2d 484, 486 (Tex.Crim.App.1984); *Westfall*, 663 S.W.2d at 666. A jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory. *Saxton*, 804 S.W.2d at 913; *Jenkins*, 740 S.W.2d at 438. We have examined the evidence and have found it sufficient to support the jury's rejection of the self-defense claim. We overrule point twenty.

■ By point eighteen, appellant claims that she is entitled to an acquittal because of a break in the chain of custody of the .32 bullets with which she allegedly shot the victim. The State points out that the chain of custody of the bullets was not an issue in the case. In fact, these bullets do not appear to have been introduced into evidence.

Dr. Joseph Rupp, Nueces County Medical Examiner, testified that he performed an autopsy on the victim, and that he "died as the direct result of a gunshot wound of the chest and the head." He described each of the two wounds and testified that they were made by .32 caliber bullets. Dr. Aurelio Espinola, Harris County Chief Deputy Medical Examiner, testified that the victim had two fatal gunshot wounds. Appellant admitted that she shot the victim with a .32 gun she had bought at a pawnshop the Friday before the killing, and an eyewitness, Thomas M. Nance, testified that she shot the victim. Thus, the State presented sufficient proof that appellant's shooting of the victim caused his death, and it was not necessary to additionally prove chain of custody of the bullets. We overrule point eighteen.

■ Appellant's points three, eight, twelve, and thirteen concern jury selection. By point eight, she asserts that the State improperly used peremptory strikes against seven Mexican–Americans and a Philippine–American, denying her equal protection under the law. *See Batson v. Kentucky*, 476 U.S. 79, 96, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986). To preserve *Batson* error, a defendant must object to the State's use of its peremptory challenges before the jury is sworn and the venire is discharged. *Henry v. State*, 729

S.W.2d 732, 736–37 (Tex.Crim.App.1987); *Green v. State*, 771 S.W.2d 576, 576–77 (Tex.App.—Houston [14th Dist.] 1989, no pet.). We have examined the record and find no timely objection to the State's use of its peremptory strikes. Thus, the complaint is not before us for review. We overrule point eight.

Appellant contests adverse rulings about prospective jurors Patsy Bond by point three, Edward Smithson by point twelve, and Danny Amador and Lupita Trevino by point thirteen. The trial court denied appellant's request for four additional challenges. Appellant had no challenge to use on juror Pauline Gayle, who was selected when she ran out of challenges. *See Allridge v. State*, 762 S.W.2d 146, 166 (Tex. Crim.App.1988), *cert. denied*, 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989); *Garza Garza v. State*, 788 S.W.2d 651, 654 (Tex.App.—Corpus Christi 1990, no pet.).

■ Appellant asserts that Bond had a bias in favor of law officers. During voir dire, Bond affirmed that she would give more credibility to a law officer's testimony, and said she did not think police officers would take the stand and lie. On the other hand, when asked, "Would you tend to believe a police officer a little bit more than, say, Ms. Nance (appellant) if they both gave conflicting stories?" she replied, "No, sir." The trial court overruled the defense challenge of Bond for cause.

■ Smithson was asked if the fact that appellant was indicted would cause him to have the opinion that she might be guilty. He replied, "I think it would have me leaning towards guilty because they have found some evidence to bring it to court. But, you know, it wouldn't say if you made me give an answer right now, of guilty or innocent, no. I wouldn't say it would make me say guilty." He then added, "[B]ecause, you know, the evidence is there I couldn't say she is guilty just because they have indicted her." He then volunteered, "But I would lean a little bit in that direction because they have already found there is some evidence there." Defense counsel asked if it would affect his judgment as the trial went on "as to how you listen to the evidence or maybe how you reached a verdict, in any way?" Smithson responded, "I would hope not, and I hear what you are saying, you want a yes or no. I don't know if I can give you a yes or no on that, because honestly that is the way I feel about it, and for her sake I would like to be open-minded." The court asked if he understood that an indictment may be returned without a defendant having an opportunity to appear before the grand jury, and he affirmed. The court also asked, "If you had to return a verdict on whether she is guilty of capital murder at this time, this minute, what would your verdict be?" Smithson replied, "Not guilty." The defense asked, "So you could set aside your feeling toward the indictment and go ahead and hear the evidence?" Smithson said, "Oh, yes, I think so." The trial court overruled the defense challenge of Smithson.

■ Prospective juror Danny Amador acknowledged that he had been told that the State would seek the death penalty. At first, Amador said the death penalty should be used in some cases, with "overwhelming evidence, maybe mass murder or something like that." The prosecutor gave the three questions used to determine punishment and explained that three "yes" answers would result in the defendant's death. Then Amador said he could not do it, but qualified his answer that he might if there had been multiple killings. After discussing the situations permitting the death penalty, Amador vacillated and finally concluded that although he favored it, he could not personally mete it out. The State challenged for cause, and the trial court granted the challenge.

■ Prospective juror Lupita Trevino had answered her questionnaire that she could not assess the death penalty. After she heard the three questions and was informed that "yes" answers to all three would result in the death penalty, Trevino first answered that she could answer them all "yes," then said she could not. When the defense tried to rehabilitate her, she equivocated, but ultimately concluded that

she could not. The trial court sustained the State's challenge for cause.

▪ The conduct of voir dire examination is within the sound discretion of the trial court. *Dowden v. State*, 758 S.W.2d 264, 274 (Tex.Crim.App.1988); *Mowbray v. State*, 788 S.W.2d 658, 666 (Tex.App.—Corpus Christi 1990, pet. ref'd). When bias or prejudice are not established as a matter of law, the trial court has discretion to determine whether bias or prejudice actually exists to such a degree that the juror is disqualified. *Anderson v. State*, 633 S.W.2d 851, 853–54 (Tex.Crim.App.1982). A trial court's refusal to sustain a defendant's challenge for cause is reviewed in light of all the prospective juror's answers. *Williams v. State*, 773 S.W.2d 525, 537 (Tex.Crim.App.1988), *cert. denied*, —— U.S. ——, 110 S.Ct. 257–58, 107 L.Ed.2d 207 (1989); *Faulder v. State*, 745 S.W.2d 327, 339–40 (Tex.Crim.App.1987); *Mowbray*, 788 S.W.2d at 666. A juror who can put aside any bias, prejudice, or conclusion of guilt and base his verdict on the evidence may serve on the jury. *Barber v. State*, 737 S.W.2d 824, 829–30 (Tex.Crim.App.1987), *cert. denied*, 489 U.S. 1091, 109 S.Ct. 1559, 103 L.Ed.2d 861 (1989). A venireperson who demonstrates an inability to consider the full range of punishment is subject to challenge for cause. *Williams*, 773 S.W.2d at 536; *Mowbray*, 788 S.W.2d at 666; *see Wainwright v. Witt*, 469 U.S. 412, 430, 105 S.Ct. 844, 855, 83 L.Ed.2d 841 (1985); *Havard v. State*, 800 S.W.2d 195, 201 (Tex. Crim.App.1989).

▪ In deciding on the propriety of the court's ruling on challenges for cause during voir dire, we keep in mind that the trial judge has had the opportunity to observe the tone of voice and demeanor of the prospective juror in determining the precise meaning intended, while we have only the "cold record." *Briddle v. State*, 742 S.W.2d 379, 384 n. 1 (Tex.Crim.App.1987); *Mowbray*, 788 S.W.2d at 666; *see Witt*, 469 U.S. at 425–26, 105 S.Ct. at 852–53. We have examined the record and find no abuse of discretion. We overrule points three, twelve, and thirteen.

▪ By points nine, ten, and eleven, appellant attacks the State's use of a statement (in rebuttal) which she made to Bee County Sheriff's Deputy Edward Hons while she was hospitalized. By point nine, she alleges a violation of her right to counsel under Tex. Const. art. I, § 10, by point ten, of her U.S. Const. amends. V and XIV rights, and by eleven, of Tex. Const. art. I, § 9, Tex.Code Crim.Proc.Ann. art. 38.22 and 38.23 (Vernon 1979 & Supp.1991). Appellant argues that she was confined to a hospital bed, severely injured, in pain and heavily medicated when she gave Hons the statement.

At the motion to suppress hearing, Hons testified that he interviewed appellant at the hospital just over four hours after the shooting. He said he advised her of her rights, and read the Miranda warning into the record, and showed that she had initialed it. He said he asked to question her and advised her of the charges. He denied that she asked for an attorney, and said she seemed coherent and willing and wanting to make a statement. He said she seemed lucid and was talking faster than he could write, but he had no problem understanding what she said. After he made corrections and they read the statement, she signed it.

Appellant testified that she was heavily sedated and in pain, did not understand what was going on, and asked for her family so they could call her an attorney. She said she was told it was for the newspaper. Appellant's counsel argued that she had established that the statement was not voluntary and should be excluded. The trial court overruled the motion.

▪ At a hearing on the voluntariness of a confession, the trial court is the exclusive judge of the credibility of witnesses and of the weight to give their testimony. *Gentry v. State*, 770 S.W.2d 780, 790 (Tex. Crim.App.1988), *cert. denied*, 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1013 (1989). The Court of Criminal Appeals upheld the admission of a statement made when a defendant had been shot twice, and claimed to have been under the influence of medication, in pain, weak, and unable to

think clearly, after proper warning. *See Aranda v. State*, 736 S.W.2d 702, 706 (Tex. Crim.App.1987), *cert. denied*, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 947 (1988). In *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), the defendant had been shot, was medicated, and underwent surgery after his confession, and it was held admissible. The trial court could conclude, based on the evidence that appellant was warned and signed a written statement containing warnings, that appellant waived her rights and voluntarily made the statement. *See Parra v. State*, 743 S.W.2d 281, 285–86 (Tex.App.— San Antonio 1987, pet. ref'd). We overrule points nine, ten, and eleven.

■ By points fifteen, sixteen, and seventeen, appellant complains of statements the prosecutor made to the jury. By points fifteen and sixteen, appellant claims that the prosecutor misstated substantive law contrary to the court's charge and impermissibly shifted the burden of proof during final argument at the guilt-innocence stage when he said, "When we put on evidence that she had—was a bad reputation for truth and veracity, they could have brought in witnesses to tell you she had a good reputation."

During cross-examination, the State asked appellant about testimony of various witnesses, and she denied numerous things they had said. She stated that Jim Short, the Johnsons, and Mr. Nance lied. Since a credibility contest had emerged, the State put on Donald Burris and Mary Marcum, who testified that appellant's reputation for truthfulness was bad.

During final argument, appellant's counsel argued, "Judge the credibility of the witnesses. Sherry would lie, she is here defending her life. Mr. Nance, he told you his story, and there is (sic) only two people here that were there, Mr. Nance and Sherry. Would a man who lost his son and was crippled have a reason to lie? Think about it." Later, counsel said, "Everybody has a reason to lie. Sherry is doing it to save her life, Mr. Nance out of vengeance, Brenda for the child, vengeance, Eddie (Hons) for his job, we are up here telling you every-

body has a reason to lie, but a swearing match goes to the defendant, it goes to Sherry."

In rebuttal, the State argued that appellant had concocted horrible stories and catalogued all of the people that the defense claimed lied. There was no objection. When the State said, "When we put on evidence that she had—was a bad reputation for truth and veracity, they could have brought in witnesses to tell you she had a good reputation," appellant objected, "It's improper to comment on witnesses not coming in." The trial court said, "Overruled." The State continued its argument that the State's version of events was consistent and that the jury must find appellant guilty, saying, "Anything else and you are having to say that Mr. Nance is a liar, that Eddie Hons is a liar, that everybody is wrong except for the Defendant...."

■ Generally, to preserve error committed during jury argument, the defendant must object until receiving an adverse ruling. *Harris*, 784 S.W.2d at 12. The exception is when the argument is so prejudicial that an instruction to disregard the argument could not cure the harm; then, neither a timely objection nor an adverse ruling is required to preserve error for review. *Harris*, 784 S.W.2d at 12. Since appellant's objection was not the same as her complaint on appeal, it is the same as no objection. *See Rezac v. State*, 782 S.W.2d 869, 870 (Tex.Crim.App.1990). Thus, appellant must show that the argument in points fifteen and sixteen was improper and was so prejudicial that an instruction to disregard could not cure the harm.

■ Proper jury argument encompasses one of the following areas: summation of the evidence, reasonable deduction from the evidence, answer to opposing counsel's argument, or plea for law enforcement. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex.Crim.App.1988); *Mora*, 797 S.W.2d at 214–15; *Mowbray*, 788 S.W.2d at 664. The invited argument rule permits response to opposing counsel's argument, outside the record, except that the response may not exceed the invitation. *Mora*, 797

S.W.2d at 215; *Mowbray,* 788 S.W.2d at 664. We examine the alleged error in the context of the entire argument. *Gaddis,* 753 S.W.2d at 398; *Mora,* 797 S.W.2d at 215; *Mowbray,* 788 S.W.2d at 664.

■ It is permissible to comment on a defendant's failure to call or produce witnesses, including reputation witnesses, when relevant to a disputed issue in the case. *McKenzie v. State,* 617 S.W.2d 211, 219 (Tex.Crim.App.1981); *Scarborough v. State,* 171 Tex.Crim. 83, 344 S.W.2d 886, 890 (1961); *Taylor v. State,* 157 Tex.Crim. 124, 247 S.W.2d 127, 128 (1952).

Appellant had made credibility an issue in the case. The prosecutor was also answering opposing counsel's argument. We find no error which could not have been cured by an instruction to disregard had an appropriate objection been lodged. We overrule points fifteen and sixteen.

■ By point seventeen, appellant claims the prosecutor committed reversible error when he said in his closing argument at the guilt-innocence stage, "It really does not matter at this stage . . . whether or not . . . Tom was abusing the child." Appellant's argument under this point depends on her assertion that some evidence supported her defense of justification to prevent imminent commission of sexual assault under Tex.Penal Code Ann. § 9.32. We concluded in our discussion of points four and six that the evidence was insufficient to support that defense as a matter of law. Thus, no harm resulted from the comment. We overrule point seventeen.

■ By point nineteen, appellant claims error in the trial court's instruction to the jury at punishment that every juror had to decide the case. Appellant contends that this was a "dynamite charge" overemphasizing the importance of reaching a verdict. Appellant did not object to that paragraph at the time of her objections to the punishment charge and made no contention at that time that the charge overemphasized reaching a verdict. Our reading of the whole charge shows that the language appellant questions emphasizes a juror's duty *not* to surrender convictions to reach con-

sensus. We find no error. We overrule point nineteen.

We AFFIRM the trial court's judgment.