NO.
07-08-0425-CR

 

IN
THE COURT OF APPEALS

 

FOR THE SEVENTH DISTRICT OF TEXAS

 

AT AMARILLO

 

PANEL D 

 

 SEPTEMBER 8, 2010



 

 



 

 

ALFREDO PEREZ, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 

 



 

 FROM THE 140TH DISTRICT COURT OF
LUBBOCK COUNTY;

 

NO. 2007-417,321; HONORABLE JIM B.
DARNELL, JUDGE



 

 



 

 

Before
QUINN, C.J. and CAMPBELL and PIRTLE, JJ.

 

 

OPINION

 

 

                Following an open plea of
guilty to the offense of murder,[1] Appellant, Alfredo Perez,
was adjudicated guilty as charged.  The
trial court then proceeded to a punishment hearing where Appellant offered
evidence of sudden passion.  Normally, murder
is a first degree felony punishable by confinement for life or for any term of
not more than 99 years or less than 5 years. 
Tex. Penal Code Ann. §§ 19.02(c) and 12.32(a) (Vernon 2003 and Vernon
Supp. 2009).  If, however, at the
punishment stage of a trial, the defendant proves in the affirmative by a
preponderance of the evidence that he caused the death under the immediate
influence of sudden passion arising from an adequate cause, then the offense is
a felony of the second degree punishable by confinement for a term of not more
than 20 years or less than 2 years.[2]  Texas Penal Code Ann. §§
19.02(d) and 12.33(a) (Vernon 2003 and Vernon Supp. 2009).  See
Sanchez v. State, 23 S.W.3d 30, 34 (Tex.Crim.App. 2000). At the conclusion
of the punishment hearing, the court assessed Appellant's sentence at
confinement for life.  In two issues,
Appellant contends the trial court's negative finding on his issue of sudden
passion is legally and factually insufficient. 
We affirm.

Background

            On
August 4, 2007, the Lubbock County Grand Jury returned an indictment charging
Appellant with intentionally and knowingly causing the death of Javier
Castaneda with a firearm on July 25, 2007. 
On October 13, 2008, Appellant pled guilty to the charge without an
agreed recommendation as to punishment.

            During the punishment phase of the
case, Danielle Galindo, Appellant's girlfriend, testified that, on July 25,
2007, she and Appellant were riding in his car when they encountered a group of
people walking on 39th Street in Lubbock, Texas.  Someone in the group threw a brick at them
and started shooting.  Appellant drove
her back to his house arriving about 5:00 p.m. 
He went to his bedroom and retrieved a gun saying he was going to pick
up his little brother, Vincent Sandoval, because he had seen him walking in the
area near to where the altercation had occurred.  She testified "he was really mad when he
left," but he promised he would "come right back."  She testified that when Appellant returned around
6:00 p.m., he was "shocked, mad or something" and he told her
"somebody got shot."

            Julian Castaneda, Javier's brother, next
testified that on July 25, 2007, he and a group of friends, Jose Castaneda
(known as "PePe"), Javier Castaneda, Jesse Alvaredo, Alfred Luis
Molina (known as "LuLu"), and Michael Moreno, were walking down 43rd
Street when Appellant drove by in his car and said "Y'all keep walking up
and down like that, we got something for y'all."  He and Appellant exchanged a few words and
Appellant drove away.  Subsequently, the
group was walking on 39th Street when two cars approached.  Appellant and Vincent were in one car and two
other persons were in the other car.  After
the occupants emptied out of the cars, a nearby neighbor told everyone to
leave.  At this point, LuLu threw a brick at Appellant's car and broke out a
window.  Thereafter, the cars left and the
group continued walking down the street. 


            Later, as the group entered the parking
lot of a nearby elementary school, they saw Appellant's car pull up to a stop
sign approximately 20 to 30 yards away and sit for approximately five seconds.  Feeling safe because the car was on the other
side of the street, Julian threw up his hands. 
Appellant and Vincent then got out of the car.  Julian approached with an unidentified member
of the group taking perhaps five steps when Appellant and Vincent started
shooting.  The group turned and ran.  Julian heard Javier say, "I'm hit."  He grabbed Javier and took him around the
corner of the school building.  Javier
later died of a gunshot wound to the stomach. 
Julian testified that, although he and Appellant had problems in the
past, Javier had nothing to do with any conflict between them.  According to his testimony, on that day Javier
was "just hanging out."  

            Jose Castaneda testified next and
corroborated Julian's account of the events that transpired.  He also testified that, prior to the
commencement of the shooting near the elementary school no one said anything to
anyone.  By Jose's account, when
Appellant and Vincent got out of the car, they were holding handguns and when
they started shooting, everyone ran.  

            Detective Larry Manale testified he
located .22 caliber, long rifle casings on the ground where Appellant had
stopped his car near the elementary school. 
He also testified there was a bullet hole in Appellant's car.  Although the bullet hole appeared recent, he
could not say when it was made.  A bullet
was found inside the door panel, but they could not identify the caliber.  When asked how long it would take to drive
from Appellant's house to the location of the shooting, Detective Manale testified
he had driven the route at a normal speed in a minimum of ten minutes.       

            Angelica Reyna testified she saw two
cars pull up on 39th Street across from a group of kids.  She recognized LuLu,
who was a friend of her husband’s.  She
didn't see any weapons but told her husband to go outside thinking there was
going to be a fight.  She testified that
the persons in the two cars got out and when her husband came outside and told
them to leave, LuLu broke windows in both cars with bricks.  At that point the two cars drove away.  With the exception of the bricks thrown by
LuLu, no one appeared to have any weapons. 
After that, the group started walking away and about ten minutes later, she
heard gunshots.

            Detective Jeremy Jones testified the
murder weapon was never located.  At 41st
Street and Avenue D, where witnesses placed Appellant and Vincent at the time
of the shooting, he found shell casings for a .22 long rifle.  Witnesses also placed an orange-tipped pistol
in Vincent's hands and he located an orange-tipped, plastic toy pistol in a
dumpster not far from where the shooting occurred.  During his investigation, Jones encountered
several inconsistencies in different witness statements.  Some witnesses said members of the group were
carrying a bat and two-by-four, others said they were not.  Other witnesses said they saw at least three members
of the group chasing Appellant's car near the elementary school, others did
not.  

            After the State rested, Appellant
testified.  According to his version of
the events, he and his girlfriend were driving around Lubbock when they encountered
a group of persons walking.  A brick was
thrown through his car window and he heard gunshots.  He panicked and drove off fast--scared.  He recognized Julian Castaneda as a member of
the group, and LuLu as the person who had thrown the brick.  Later, he found a bullet hole in the side of
his car.  As he drove home, he noticed
Vincent walking.  When he arrived at his
house, he ran to his room and grabbed his gun, a .22 caliber rifle, and told
Danielle that he was going back to get Vincent. 


            After he picked up Vincent,
Appellant testified Vincent wanted to go to his dad's house.  On the way there, he stopped at a stop sign
near an elementary school and noticed the same crowd that had earlier thrown
the brick at his car.  He turned the
corner to avoid a confrontation but noticed the crowd running toward his
car.  He stopped to avoid another car
backing out of a driveway and observed that the crowd was gaining on him.  He jumped out of his car, armed himself with his
rifle, and fired shots into the air.  He
then jumped back into his car and drove away.  He testified he did not know that he had shot
anyone until Vincent told him, "I think one of them got hit."  He later wrapped the gun in a black shirt and
threw it into a dumpster before taking off for Dunbar Lake.  He stayed at the lake all night because
"he was on the run."

            Appellant further testified that,
after the initial encounter, he was upset. 
He described his mood at the house when he picked up his gun and at the
school when he fired the warning shots as mad, panicking, and scared.  He testified that, when he fired his rifle,
he did not know that Javier was in the group. 
The only person he recognized was Julian and he admitted "[t]here
had been bad blood between him and Julian Castaneda."  He testified that in 2006 he had gotten in a
fight with Julian's cousins.  Before
that, when he was seventeen, he was jumped by some people who called themselves
the "Texas Head Busters" and was hit twice in the face with a
two-by-four.  He attributed the beating to
associates of Julian.  When he was
eighteen, he was shot in the stomach by Julian's friend, Jeremy Paiz.  

            Detective Rene Martinez was then called
as a rebuttal witness for the State.  He
testified he investigated a shooting that occurred January 19, 2007.  At the conclusion of his investigation, he
determined that Kevin Corales, Jeremy Paiz, and Steven Lee Perez had been involved in shooting
Appellant.  Information he gathered
during the investigation led him to believe the shooting had to do with a
"drug deal or drug deal rip-off."[3]

            After the punishment hearing, the
trial court issued its judgment sentencing Appellant to confinement for
life.  This appeal followed.

Discussion

            Appellant
contends the trial court's negative finding on the issue of whether he acted
under the influence of sudden passion arising from adequate cause was so against
the great weight and preponderance of the evidence as to be manifestly
unjust.  Appellant asserts that the group
running towards his car with long objects combined with the earlier incident
where a brick was thrown at his car and he was fired upon represented
sufficient provocation to produce a degree of terror that rendered him
incapable of cool reflection.  

I.          Issue
No. 1 -- Legal Sufficiency

 

A.  Standard of Review

            

An
appellate court may review the legal sufficiency of the evidence to support a
fact finder's rejection of an issue on which the defendant bore the burden of
proof, i.e., affirmative defenses and the issue of sudden passion.  See
Clark v. State, 190 S.W.3d 59, 62 (Tex.App.--Amarillo 2005, no pet.); Cleveland v. State, 177 S.W.3d 374, 388
(Tex. App.--Houston [1st Dist.] 2005, pet. ref'd) (en banc), cert. denied, 547 U.S. 1073, 126 S.Ct.
1774, 164 L.Ed.2d 523 (2006); Ballard v.
State, 161 S.W.3d 269, 272 (Tex.App.--Texarkana 2005), aff'd, 193 S.W.3d 916 (Tex.Crim.App. 2006).

When
conducting a legal sufficiency review of the evidence related to an issue on
which the defendant bore the burden of proof, an appellate court reviews the
evidence in a light most favorable to the verdict and reverses only when the
evidence conclusively establishes the opposite. 
See Wheat v. State, 165 S.W.3d
802, 806 n. 6 (Tex.App.--Texarkana 2005, pet. dism'd,
untimely filed); Howard v. State, 145
S.W.3d 327, 331 (Tex.App.--Fort Worth 2004, no pet.).  An appellate court reviews the legal
sufficiency of such evidence under a two-part test.  See
Clark, 190 S.W.3d at 62; Cleveland,
177 S.W.3d at 388; Howard, 145 S.W.3d
at 334.  First, the appellate court
examines the record for evidence that supports the verdict (i.e., the negative
finding) while ignoring evidence to the contrary; see Clark, 190 S.W.3d at 62; Cleveland,
177 S.W.3d at 388; Howard, 145 S.W.3d
at 334, and, if there is no evidence to support the verdict, the court then examines
whether the record supports the defendant's affirmative defense or issue as a
matter of law.  See Clark, 190 S.W.3d at 334; Nolan
v. State, 102 S.W.3d 231, 238 (Tex.App.--Houston [14th Dist.] 2003, pet.
ref'd).  If the record reveals evidence
of the defendant's affirmative defense or issue that was not subject to a
credibility assessment, the evidence shows as a matter of law that the defendant
proved his affirmative defense or issue. 
See Cleveland, 177 S.W.3d at
388-89.  However, if the evidence
supporting the defendant's affirmative defense or issue was subject to the fact
finder's assessment of credibility, that evidence is not considered in the
appellate court's matter-of-law assessment.  See Cleveland, 177 S.W.3d at 389.

            B.  Analysis

            The core concept of "sudden
passion" is that at the moment of the killing the actor's mental state rendered
him incapable of rational thought and collected action.  See
Swearingen v. State, 270 S.W.3d 804, 820 (Tex.App.--Austin 2008, pet.
ref'd).  "Sudden passion" is
"passion directly caused by and arising out of provocation by the
individual killed or another acting with the person killed which passion arises
at the time of the offense and is not solely the result of former provocation."  Tex. Penal Code Ann. § 19.02(a)(2) (Vernon
2003).  "Adequate cause" is
"cause that would commonly produce a degree of anger, rage, resentment, or
terror in a person of ordinary temper, sufficient to render the mind incapable
of cool reflection."  Id. at (a)(1).  Merely acting in response to provocation by
another is not enough to raise the issue; see
Trevino v. State, 100 S.W.3d 232, 241 (Tex.Crim.App. 2003), and the
provocation must arise at the time of the offense.  See Tex.
Penal Code Ann. § 19.02(a)(1) (Vernon 2003); Nance v. State, 807 S.W.2d 855, 861
(Tex.App.--Corpus Christi 1991, pet ref'd). 
    

            Examining the record for evidence
that supports the trial court's negative finding on the issue of sudden-passion,
while ignoring evidence to the contrary, we find there is some evidence that Appellant
did not kill Javier out of sudden passion arising from adequate cause.  Based upon the testimony of Julian and Jose,
the trial court could have reasonably found that Appellant was the protagonist
in a series of unprovoked attacks that ultimately ended in Javier's death.  According to the testimony of other witnesses,
Appellant first threatened the group while driving by in his car as the group
was walking down 43rd Street.  Then, he
and Vincent, along with two others in a second car, confronted the group on
39th Street leading to an altercation where LuLu threw a brick through
Appellant's car window.  Appellant then
confronted the group a third time near the elementary school where he got out
of his car and, standing twenty to twenty-five yards away from the group, opened
fire with his rifle.  Thus, there is some
evidence Appellant forced the third confrontation and initiated an unprovoked
attack causing Javier's death.  

            Having reached the conclusion there
is some evidence supporting the trial court's negative finding on the issue of sudden
passion, our legal sufficiency inquiry is at an end.  See
Howard, 145 S.W.3d at 333-34.  We
hold that the evidence concerning the trial court's negative finding on Appellant's
sudden passion issue is legally sufficient as a matter of law.  Appellant’s first issue is overruled.  

II.         Issue
No. 2 -- Factual Sufficiency

A.   Standard of Review

 

            When conducting a factual
sufficiency review on an affirmative defense or issue on which the defendant
had the burden of proof,[4] an appellate court reviews
all of the evidence in a neutral light, but we do not intrude on the fact
finder's role as the sole judge of the weight and credibility given to any
witness's testimony.  See Clark, 190 S.W.3d
at 63; Cleveland, 177 S.W.3d
at 390-91; Wheat, 165 S.W.3d at 807
n. 6.  When a defendant has asserted such
an affirmative defense or issue, an appellate court considers all of the
evidence and determines whether the judgment rendered is so against the great
weight and preponderance of the evidence as to be manifestly unjust.  See
Edwards v. State, 106 S.W.3d 833, 843 (Tex.App.--Dallas 2003, pet. ref'd)
(citing Clewis v. State, 922 S.W.2d
126, 132 (Tex.Crim.App. 1996)); Cleveland,
177 S.W.3d at 390; Ballard, 161
S.W.3d at 271.  When an appellate court
concludes the contrary evidence is insufficient to support rejection of
defendant's affirmative defense or issue, it must clearly state why the verdict
is so against the great weight and preponderance of the evidence as to be
manifestly unjust, why it shocks the conscience, or why it clearly demonstrates
bias.  See Meraz, 785 S.W.2d at 154 n.2; Howard, 145 S.W.3d at 335.  The fact-finder alone determines the weight
to be given contradictory testimonial evidence because that determination
depends on the fact-finder's evaluation of the credibility and demeanor.  Cain v. State, 958 S.W.2d 404, 408-09 (Tex.Crim.App.
1997).  As the determiner of the
credibility of the witnesses, the fact-finder may choose to believe all, some,
or none of the testimony presented.  Id. at 407 n.5.  

B. 
Analysis 

               Appellant's contention that the
evidence was factually insufficient to establish a negative finding on his sudden
passion issue relies entirely on a finding that Appellant's testimony was credible.  He asserts that, at the time of the
occurrence, he was merely driving Vincent home, he brought the gun for his own
protection, he stopped his car to avoid hitting another car, and, when he saw
the group rapidly approaching with long objects, he got out of the car and
fired warning shots into the air.  Based
upon his testimony, Appellant contends he was provoked by the group at a time
when he was emotionally charged from the earlier confrontation where a brick
was thrown through the window of his car and he was fired upon.  

               Sudden passion means passion
directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely
the result of former provocation. 
Tex. Penal Code Ann. § 19.02(a)(2) (Vernon
2003).  Here, the only evidence of an
identifiable, physical act that threatened Appellant was testimony and physical
evidence establishing that his vehicle had been shot at some undetermined time
in the past and that LuLu threw a brick into
Appellant's car window during a prior confrontation that day.  Passion solely the result of former
provocation is insufficient.  See McKinney v. State, 179 S.W.3d 565, 570 (Tex.Crim.App. 2005).  When, as here, Appellant was the aggressor,
or precipitator of the confrontation, and neither Julian, nor those acting with
him, did anything to provoke him at the time of the offense, it cannot be said
that Appellant's passion was directly caused by and arose out of adequate provocation
at the time of the offense.  See Nance v. State, 807 S.W.2d 855, 861
(Tex.App.--Corpus Christi 1991, pet. ref'd).

               Furthermore, in most cases, the
issue of sudden passion is resolved exclusively by the fact-finder's assessment
of whether the witness is credible; Cleveland,
177  S.W.3d at
391, and the fact-finder may choose to believe all, some, or none of the
testimony presented.  Cain, 958 S.W.2d at
407 n.5.  The fact-finder alone determines
the weight to be given contradictory testimonial evidence because that
determination depends on the fact-finder's evaluation of the credibility and
demeanor of the witness.  958 S.W.2d at 408-09.  With the exception of testimony that Julian
and an unidentified member of the group took steps towards Appellant after
Appellant got out of the car at least twenty yards away, there is no evidence
of any provocative acts, words, or omissions occurring immediately prior to
Appellant shooting Javier.  Thus, the
trial court was free to disbelieve Appellant's testimony and believe the
State's witnesses who testified Appellant engaged in an unprovoked attack
resulting in a fatal gunshot wound.  

                 After
viewing the evidence in a neutral light, we hold that the trial court's
negative answer on the sudden passion issue is not so against the great weight
and preponderance of the evidence as to be manifestly unjust.  See
Cleveland, 177 S.W.3d at 390.  Appellant's second issue is overruled. 

III.        Attorney's Fees      

            We also note an issue not raised by Appellant regarding the assessment of
attorney's fees.[5]  The written judgment in this case reflects
the assessment of court-appointed attorney's fees totaling $6,868.00, as costs
of court.  In order to assess attorney's
fees as court costs, a trial court must determine that the defendant has
financial resources that enable him to offset in part or in whole the costs of
legal services provided.  Tex. Crim.
Proc. Ann. art. 26.05(g) (Vernon 2009).  Here,
the clerk's record reflects the trial court found Appellant indigent and unable
to afford the cost of legal representation both before trial in August 2007,
and again after trial in October 2008. 
Unless a material change in his financial resources occurs, once a
criminal defendant has been found to be indigent, he is presumed to remain
indigent for the remainder of the proceedings. 
Tex. Code Crim. Proc. Ann. art. 26.04(p) (Vernon Supp. 2009).  Therefore, because there is evidence of
record demonstrating that immediately following rendition of judgment Appellant
was indigent and qualified for court-appointed counsel, we presume that his
financial status has not changed.   

            Furthermore,
the record must reflect some factual basis to support the determination that
the defendant is capable of paying attorney's fees.  Barrera v. State, 291 S.W.3d 515, 518 (Tex.App.--Amarillo 2009, no
pet.); Perez v. State, 280 S.W.3d
886, 887 (Tex.App.--Amarillo 2009, no pet.).

            We
note that the record in this case does not contain a pronouncement,
determination, or finding that Appellant had financial resources that enable
him to pay all or any part of the fees paid his court-appointed counsel, and we
are unable to find any evidence to support such a determination.  Therefore, we conclude that the order to pay
attorney's fees was improper.   See
Mayer v. State, 309 S.W.3d 552, 555-56 (Tex.Crim.App.
2010).  No trial objection is required to
challenge the sufficiency of the evidence regarding the defendant's ability to
pay.  Id.  When the evidence does not support an
order to pay attorney's fees, the proper remedy is to delete the order.  Id. at
557; see also Anderson v. State, No.
03-09-00630-CR, 2010 Tex.App. LEXIS 5033, at *9 (Tex.App.--Austin, July 1, 2010, no pet.) (also modifying judgment to delete attorney's fees).  Accordingly, we modify the judgment to delete
the order to pay attorney's fees.  

Conclusion

            Having modified the trial court's judgment to delete the
order obligating Appellant to pay $6,868.00 in attorney's fees, the judgment,
as modified, is affirmed.    

  

                                                                                    Patrick A. Pirtle

                                                                                          Justice

Publish. 











[1]Tex. Penal Code Ann. § 19.02(b)(1) (Vernon 2003). 





[2]Before September 1, 1994, the
existence of sudden passion was an element of the offense of voluntary
manslaughter (a lesser-included offense of murder), to be determined by the
jury at the guilt/innocence stage.  See Bradley v. State, 688 S.W.2d 847,
849 (Tex.Crim.App. 1985).  Effective
September 1, 1994, the existence of sudden passion became a punishment stage
issue.  





[3]In the State's case-in-chief, Davela
Maynard, a Department of Public Safety Trooper, testified that, on June 30,
2007, Appellant had been arrested for possession of marijuana.  After Trooper Maynard pulled Appellant over
for a seat belt violation, Appellant attempted to flee the scene.  After detaining Appellant, the trooper
detected the smell of burnt marijuana and located marijuana in Appellant's
possession.





[4]It
is well-established that an appellate court may review the factual sufficiency
of the evidence to support a negative finding on the sudden passion issue in
the punishment stage of trial. Cleveland,
177 S.W.3d at 385. 
See Meraz
v. State, 785 S.W.2d 146, 154-55 (Tex.Crim.App.
1990).

 





[5]Courts of appeals may review
unassigned error in criminal cases, particularly where the record discloses
error that should be addressed in the interest of justice.  Hammock
v. State, 211 S.W.3d 874, 878 (Tex.App.--Texarkana 2006, no pet.).  Where, as here, the error appears on the face
of the judgment and does not involve the merits of the criminal trial, but
instead solely addresses the clerical correctness of the judgment, we find that
the interest of justice allow that we address the issue.