NO. 07-04-0244-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

OCTOBER 19, 2005

_____

PHILLIP CLARK, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2003-402466; HONORABLE BRADLEY S. UNDERWOOD, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

_____**OPINION**

Appellant Phillip Clark was convicted of aggravated kidnapping. During punishment, the jury rejected appellant's affirmative defense of voluntary release in a safe place and sentenced appellant to 50 years confinement and a $10,000 fine. Appellant appeals his sentence. We affirm.

_____

In March 2003, Frank Wayne Beck returned from a vacation and reported to appellant's business for work. Appellant had employed Beck for approximately eight to nine months. Upon Beck's arrival, appellant informed Beck that the business had been broken into over the weekend and that he suspected Beck of participating in the break-in. Beck denied any knowledge or association with the perpetrators of the break-in and attempted to leave but was detained by two other employees of appellant. Appellant, not believing Beck, became physically aggressive in an attempt to gain a confession. During the questioning, Beck was tied to a chair, struck with a lead pipe and sledgehammer, bitten by a dog, threatened with a shotgun, threatened with a needle which Beck believed was filled with battery acid, and burned by a cutting torch. Throughout the assault, Beck continued to deny any involvement in the break-in and appellant eventually agreed to let Beck go. As a condition of letting him go, appellant told Beck that he would kill him, his wife and his children if Beck told anyone of the detention and assault. Before leaving the building, appellant instructed one of his accomplices to help Beck shower and then release him. The accomplice helped Beck shower, gave him a shirt to wear, and then released him. However, because of his injuries, Beck could not walk and had to crawl to his vehicle. Once Beck had driven away from appellant's business, Beck used his cell phone to call his wife. Beck went home where his wife treated his wounds. Beck did not seek professional medical attention until after he reported the incident to the police three or four days later. Beck had multiple fractures of his right leg, broken bones in his hands, and burns on his arms.

Appellant was convicted by a jury of aggravated kidnapping. At punishment, appellant contended that he voluntarily released Beck in a safe place and asked the jury for an affirmative finding on that issue. Although aggravated kidnapping is classified as a first degree felony, an affirmative finding that Beck was voluntarily released in a safe place would have limited the punishment to that of a second degree felony. The jury did not make the requested affirmative finding and recommended that appellant be incarcerated in the Institutional Division of the Texas Department of Criminal Justice for 50 years and fined $10,000. Appellant filed notice of appeal.

By five issues, appellant raises three arguments on appeal: (1) whether, during punishment, the evidence was legally and factually sufficient to support the jury's rejection of appellant's affirmative defense that he voluntarily released Beck in a safe place; (2) whether the trial court erred in overruling appellant's request to include definitions of "voluntarily" and "safe place" in the court's jury charge; and (3) whether the trial court erred in overruling appellant's objection to the State's closing argument.

Issue one: Legal and factual sufficiency of the
rejection of appellant's affirmative defense

To prove that Beck was voluntarily released in a safe place, appellant contends that he only had to show that Beck was released "in a place and manner which realistically conveys to the victim that he/she is now freed from captivity and is now in circumstances and surroundings wherein aid is readily available." See Wiley v. State, 820 S.W.2d 401, 411 (Tex.App.–Beaumont 1991, no writ). Appellant further contends that there is no

evidence to support the jury's rejection of his affirmative defense and that he has proven his position as a matter of law.[1]

In an aggravated kidnapping case, it is an affirmative defense on punishment that the kidnapper voluntarily released a victim in a safe place. Brown v. State, 98 S.W.3d 180, 186 (Tex.Crim.App. 2003). If the defendant proves that he voluntarily released the victim in a safe place by a preponderance of the evidence, the offense is reduced to a second degree felony. See TEX. PEN. CODE ANN. § 20.04(d) (Vernon 2003). To determine if the evidence is legally sufficient to support the jury's rejection of appellant's affirmative defense, we first examine the record for evidence which supports the jury's rejection while ignoring evidence to the contrary. If there is no evidence to support the jury's rejection, we then examine whether the contrary is established as a matter of law. Nolan v. State, 102 S.W.3d 231, 238 (Tex.App.–Houston [14th Dist.] 2003, pet. ref'd).

For factual sufficiency review, the burden of proof at trial dictates the standard of appellate review. Zuniga v. State, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004). When the defendant has asserted an affirmative defense or has the burden of proof on an issue, a reviewing court considers all the evidence and determines whether the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust. Id. at 482. In a review of the evidence for factual sufficiency, we review the evidence in a neutral light. See id. at 481.

---

[1]Although appellant includes "voluntarily" in his sufficiency argument, the State does not contest that appellant voluntarily released Beck. Therefore, we will limit our review of the jury's rejection of appellant's affirmative defense to whether the release was made in a "safe place." See TEX. R. APP. P. 47.1.

4

To determine whether the evidence is legally sufficient to support the jury's rejection of appellant's affirmative defense, we look to the evidence supporting the jury's rejection and ignore all evidence to the contrary. Nolan, 102 S.W.3d at 238. In assessing whether appellant released his victim in a safe place, we review the surrounding circumstances of the release, and will consider factors such as: (1) the remoteness of the location; (2) the proximity of authorities or persons who could aid or assist; (3) the time of day; (4) climatic conditions; (5) the condition of the victim; (6) the character of the location or surrounding neighborhood; and (7) the victim's familiarity with the location or surrounding neighborhood. Id. The evidence before the jury reflects that Beck was threatened, beaten, burned, and unable to walk or stand. The jury was also informed that Beck's injuries consisted of burns to his arm, multiple fractures to his leg, and broken bones in both hands. The testimony does not show that anyone else was present at appellant's business except Beck, appellant, and appellant's accomplices; hence, there was no evidence of anyone being outside the building, in the parking lot, or nearby to aid or assist Beck. Therefore, we conclude that the evidence was legally sufficient to support the jury's rejection of appellant's affirmative defense.[2]

We next review the evidence for factual sufficiency to decide whether the jury's rejection of appellant's affirmative defense was so against the great weight and preponderance of the evidence as to be manifestly unjust. See Zuniga, 144 S.W.3d at 482.

---

[2]Although appellant contends that he has proven the affirmative defense as a matter of law, that is only a consideration when there is no evidence to support the jury's rejection. Nolan, 102 S.W.3d at 238. Since we have determined that evidence existed to support the jury's rejection, we need not address whether appellant proved his affirmative defense as a matter of law. See TEX. R. APP. P. 47.1.

In our factual sufficiency review, we review all of the evidence neutrally but do not intrude on the factfinder's role as sole judge of the weight and credibility to be given to the evidence. Cleveland v. State, No. 01-03-01040-CR, 2005 WL 826943, at *13, (Tex.App.–Houston [1st Dist.], April 7, 2005, pet. ref'd). Recalling the Nolan factors, we note that the record is silent on the remoteness of the location, climatic conditions, or the character of the location or surrounding neighborhood. The time of Beck's release was during daytime hours. Beck had worked for appellant for approximately eight months and was familiar with the location and surrounding neighborhood. In addition, appellant threatened Beck and his family, but there is no evidence that anyone followed Beck as he left the premises. These facts would presumably factor against the jury's rejection. In contrast, we consider the severity of Beck's physical injuries and his inability to walk, thus, necessitating him crawling to his car. We also note that the dog and other accomplice that had attacked Beck were unaccounted for and could have continued to pose a threat to Beck's safety. Finally, we consider that no immediate aid was available and Beck had to drive himself to his home to seek medical attention from his wife. Since the factfinder is in the best position to evaluate the weight and credibility of the testimony, we will defer to the jury's rejection of appellant's affirmative defense since the evidence we have reviewed does not indicate that the jury's rejection is so against the great weight and preponderance of the evidence as to be manifestly unjust.

Viewing only the evidence supporting the jury's rejection, we conclude the evidence is legally sufficient to support the jury's rejection of appellant's affirmative defense. As for factual sufficiency, the jury had evidence supporting and opposing the jury rejection of

6

appellant's affirmative defense. We cannot conclude that the jury's rejection of appellant's affirmative defense was so against the great weight and preponderance of the evidence as to be manifestly unjust, or that the evidence would require this court to intrude upon the jury's role as sole judge of the weight and credibility given to the witnesses's testimony. Thus, we conclude that the evidence is legally and factually sufficient to support the jury's rejection of appellant's affirmative defense. We overrule appellant's first issue.

Issue two: Inclusion of definitions within a court's charge

Appellant contends that the trial court has a duty to prepare a written charge setting forth the applicable law. While acknowledging that neither "voluntarily" or "safe place" are statutorily defined, appellant contends that the trial court was required to include definitions for "voluntarily" and "safe place" in the court's charge because "safe place" has acquired a technical legal meaning and because "voluntarily" is ambiguous.

An appellate court must first determine whether error exists in the jury charge. Hutch v. State, 922 S.W.2d 166, 170 (Tex.Crim.App. 1996). If the error in the charge was the subject of a timely objection, then reversal is required if the error was calculated to injure the rights of defendant which means no more than there must be some harm to the accused from the error. Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984).

Since neither "voluntarily" nor "safe place" are statutorily defined, the court is under no duty to define the terms for the jury unless (1) the terms have acquired a technical legal meaning and (2) there is a risk that the jury would arbitrarily apply their own personal definitions or that the definitions are necessary for a fair understanding of the evidence.

7

See Middleton v. State, 125 S.W.3d 450, 454 (Tex.Crim.App. 2003). A term will be defined and given a technical legal meaning when it is shown that the term (1) has different meanings in different contexts, and (2) as used in the case, does not have a meaning consistent with the common and ordinary meaning that we can presume jurors to know and apply. Middleton, 125 S.W.3d at 459-60 (Price, J., dissenting). Without being specially defined, "voluntarily" and "safe place" are to be taken and understood in their usual acceptation in common language. See TEX. CODE CRIM. PROC. ANN. art. 3.01 (Vernon 2005).

Although appellant has cited several cases for the contention that "safe place" has acquired a technical legal meaning by being judicially defined,[3] those cases do not support appellant's contention. Appellant's cited cases discuss evidentiary sufficiency or appellant's entitlement to an instruction on the affirmative defense of voluntary release in a safe place, but do not address whether a definition for "safe place" must be included in the court's charge. Appellant has not demonstrated that "safe place" may be defined differently in different contexts or how the proposed definition differs from the common usage. Thus, we conclude that appellant has not shown that "safe place" requires a definition as a term with a technical legal meaning.

In addition, appellant's argument that "voluntarily" is ambiguous is insufficient to support his request for its definition in the court's charge. Appellant has failed to

---

[3]See Harrell v. State, 65 S.W.3d 768, 772 -773 (Tex.App.–Houston [14th Dist.] 2001 pet. ref'd); Flowers v. State, 959 S.W.2d 644, 646 (Tex.App.–Houston [1st Dist.] 1996, writ ref'd); Wiley v. State, 820 S.W.2d at 411; Carreon v. State, 63 S.W.3d 37, 39-40 (Tex.App.–Texarkana 2001, pet. ref'd).

8

demonstrate that the jurors were unable to deliberate without a definition. A jury that creates its own definition doesn't necessarily do so arbitrarily; by considering the instructions in the court's charge and the word in context, it is possible for a jury to arrive at a proper meaning or definition. See Andrews v. State, 652 S.W.2d 370, 376-77 (Tex.Crim.App. 1983). Appellant has not directed us to any evidence to show that the jury arbitrarily applied their own personal definition to "voluntarily" or that the definition was necessary for a fair understanding of the evidence. Therefore, we conclude that appellant has failed to show that the trial court erred by declining to include either requested definition in the court's charge.

Appellant has failed to demonstrate that "safe place" has acquired a technical legal meaning, or that the jury was unable to arrive at the common definition and usage of the word "voluntarily" without a definition included in the court's charge. We overrule appellant's second issue.

Issue three: Improper jury argument

Appellant contends that the State's closing argument was improper because the State's argument of "safe place" was contrary to law. Appellant claims that the closing argument did not fall within a permissible area of jury argument and that he was harmed because the jury did not deliberate on his case with the correct and applicable law.

Proper jury argument may include (1) a summation of the evidence presented at trial; (2) reasonable deductions drawn from evidence presented at trial; (3) a response to opposing counsel's argument; or (4) a plea for law enforcement. See Lagrone v. State, 942

9

S.W.2d 602, 619 (Tex.Crim.App. 1997). To constitute reversible error, the argument must be violative of a statute, inject new facts harmful to the accused into the trial proceedings, or be manifestly improper, harmful and prejudicial to the rights of the accused. Wilson v. State, 938 S.W.2d 57, 59 (Tex.Crim.App. 1996). In reviewing challenges to jury argument, the court is to consider the remarks within the context in which they appear. Gaddis v. State, 753 S.W.2d 396, 398 (Tex.Crim.App. 1988).

Appellant's third issue is based upon his belief that "safe place" is defined as "a release occurring in a place and manner realistically conveying to the victim that he is freed from captivity and is in circumstances and surroundings wherein aid is readily available." He claims that the State's argument was improper because it focused on the fact that Beck had been tortured, there was no help at the site, the site was not a hospital, and there was no doctor present to assist or aid Beck. Appellant further claims that the State erroneously led the jury to consider Beck's injuries, the fact that he had to crawl to his car and drive himself away, and that help was not readily available as additional factors relevant to the jury's determination of "safe place."

However, as previously noted, there is no statutory definition for "safe place," and the jury is allowed to assess the evidence necessary to develop a definition of "safe place" as that term is commonly used. Many factors can be considered in assessing whether appellant released his victim in a safe place including the condition of the victim, the proximity of authorities or persons who could aid or assist, and the remoteness of the location. Nolan, 102 S.W.3d at 238. The State's strategy of directing the jury to consider these factors was a permissible use of closing argument because it summarized the

10

evidence as well as provided a reasonable inference in which to deliberate on the affirmative defense raised by appellant.

We conclude that the State's argument of "safe place" constituted a summation of evidence presented at trial and reasonable deductions to be drawn from evidence presented at trial. We overrule appellant's third issue.

Conclusion

For the foregoing reasons, we affirm.


Mackey K. Hancock
Justice


Publish.