**Opinion filed September 17, 2009**



In The

# Eleventh Court of Appeals

———————

## No. 11-07-00284-CR

———————

## PANCHO VILLARREAL, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CR18-196**

## M E M O R A N D U M   O P I N I O N

The jury convicted Pancho Villarreal of indecency with a child and assessed his punishment at confinement for ten years. Following the jury's recommendation, the trial court suspended the imposition of the sentence and placed appellant on community supervision for ten years. We affirm.

### I. *Background Facts*

On September 11, 2005, Villarreal, fifteen-year-old J.B., and several friends went to the lake. J.B. and Villarreal were "talking." The evidence indicates that this was an informal relationship – similar to, but not as serious as, dating. The group started drinking, and J.B. became intoxicated.

She and Villarreal went swimming and were separated from the remainder of the group. They started kissing. Villarreal touched her breasts with his hand. J.B. told Villarreal no, but he kept touching and kissing her.

Officer David Dulaney, with the Lake Brownwood Lake Patrol, was on duty September 11. He saw a group of juveniles congregated between the dam and the public docks. He drove to that area and walked to a position near the group. He heard someone say "[p]our me another shot" and, because he believed underage kids might be drinking, moved to a position where he could see everyone. He heard a young girl say that she did not "want to do anything naughty" and "stop." He saw J.B. lying on a rock on her back partially submerged in the water. Villarreal was sitting over her, and they were kissing. Villarreal was touching her breasts. J.B. told him to stop and asked for her friend. Villarreal told her that the friend was close by and could see her. Villarreal kept J.B. on the rock and kept her from leaving. Villarreal's hands went underwater while he was kissing J.B. He brought her bathing suit bottom up and put it on the rock above her head. J.B. told him to stop and asked where her bathing suit was. Officer Dulaney was concerned that a sexual assault might be in progress, and he started toward the water. When he arrived, Villarreal had his swimming trunks off.

Officer Dulaney told J.B. and Villarreal to move to another area so that they could get out of the water. J.B. attempted to put her bikini bottom back on but nearly drowned because she was so intoxicated. Eventually, she needed assistance getting out of the water. Officer Dulaney took everyone to his patrol unit. He had to carry J.B. and was worried that she might be suffering from alcohol poisoning. He issued the minors tickets, arrested Villarreal for attempted sexual assault, and arrested an eighteen-year-old girl for an alcohol-related charge. Villarreal was ultimately indicted for indecency with a child.

## II. *Issues*

Villarreal challenges his conviction with five issues. Villarreal argues that the evidence was legally and factually insufficient to support the jury's rejection of his affirmative defense and that this defense was established as a matter of law. Villarreal contends that the trial court erred by allowing the State to present evidence of an extraneous offense, that the court failed to correctly instruct the jury on the permissible use of this evidence, and that the trial court erred by failing to

2

dismiss a juror and grant a mistrial after it was discovered that the juror knew one of the State's witnesses.

## III. *Sufficiency of the Evidence*

The State alleged that Villarreal committed the offense of indecency with a child by touching J.B.'s breasts with the intent to arouse or gratify his sexual desire. Villarreal does not dispute this allegation on appeal but contends that he established an affirmative defense as a matter of law or, alternatively, that the evidence was legally or factually insufficient to support the jury's rejection of his affirmative defense. TEX. PENAL CODE ANN. § 21.11(b) (Vernon 2003) provides that it is an affirmative defense to a prosecution for indecency with a child if the defendant:

> (1) was not more than three years older than the victim and of the opposite sex;

> (2) did not use duress, force, or a threat against the victim at the time of the offense; and

> (3) at the time of the offense:

>> (A) was not required under Chapter 62, Code of Criminal Procedure, to register for life as a sex offender; or

>> (B) was not a person who under Chapter 62 had a reportable conviction or adjudication for an offense under this section.

Villarreal was within three years of J.B.'s age, they were of the opposite sex, he was not required to register as a sex offender, and he had no reportable conviction or adjudication for an offense under Section 21.11(b). The issue is whether he used duress, force, or a threat.

When conducting a legal sufficiency review of the jury's rejection of an affirmative defense, we examine the evidence in the light most favorable to the jury's rejection and reverse only if the evidence conclusively establishes the opposite. *Ballard v. State*, 161 S.W.3d 269, 272 (Tex. App.—Texarkana 2005), *aff'd*, 193 S.W.3d 916 (Tex. Crim. App. 2006). In conducting a factual sufficiency review, we review all of the evidence in a neutral light and determine whether the rejection of the affirmative defense is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Clark v. State*, 190 S.W.3d 59, 63 (Tex. App.—Amarillo 2005, no pet.).

3

J.B. testified that Villarreal touched her breasts after she told him that she did not want to do anything. She also testified that she screamed "no" once and that she told Villarreal to "stop it." Her testimony was confirmed by Officer Dulaney. He heard her say no and stop, and he saw Villarreal continuing to touch J.B.'s breasts and restrain her when she attempted to leave. If their testimony is believed, this is legally sufficient evidence. We recognize that J.B. testified that Villarreal did not injure her physically, that she was not afraid of him, and that he did not threaten her. This is relevant to Villarreal's affirmative defense, but it does not establish it as a matter of law because, even though Villarreal did not use extreme force or duress, the jury could reasonably conclude that he forced her to stay on the rock while he continued fondling her in spite of her requests and her attempt to leave.

The evidence is also factually sufficient.[1] Villarreal vigorously challenged J.B.'s credibility. Because of the amount of alcohol she consumed, her memory of the incident was limited. She admitted lying to Officer Dulaney when he came by her house three weeks after the event by telling him that she could not remember anything even though she could and that she did not know that there was vodka in her soft drink when she did. She testified that she lied because her father was in the room at the time. Even though J.B. was only fifteen feet away from her friends at the time of the incident, they did not hear her scream. Officer Dulaney testified that J.B.'s friends were close enough that at least one should have heard her scream. Instead, J.B.'s friends described her as happy and testified that Villarreal and J.B. were behaving like a couple. One friend heard J.B. tell Villarreal "no" while Villarreal was kissing her on the neck. She did so with a smile, and the friend did not believe that J.B. really meant "no." This friend was surprised when she was subpoenaed for trial because she never suspected that anything had happened between J.B. and Villarreal. Finally, Villarreal points to J.B.'s admission that, in spite of her allegation, they remained friends after this incident.

Villarreal testified and controverted J.B.'s testimony. He denied using force, duress, a threat, or intimidation. Villarreal testified that he and J.B. had made out before and that she had placed her hand under his clothes. He admitted touching her breasts at the lake but contended that he did so with her consent. J.B. did say "no," but she did so playfully and did not really mean "no." He

---

[1] A factual sufficiency review requires consideration of all of the evidence in a neutral light. *Clark*, 190 S.W.3d at 63. But in deference to Villarreal's challenge to the extraneous offense evidence, we are not including that in our review.

4

helped her on the rock and kept her from swimming away to a friend because he was concerned for her safety. Villarreal felt that J.B. was too intoxicated to be swimming. He claimed that she did not push him away, did not scream, and did not try to fight him off. He also testified that they kept seeing each other after this incident.

The jury was responsible for resolving the conflicting testimony. There is no dispute that Villarreal continued touching J.B. after she told him "no" and that he restrained her when she attempted to leave. Whether "no" really meant "no" in this incidence and whether his motive for restraining J.B. was laudable or iniquitous are inherently fact questions. The jury could reasonably find J.B.'s and Officer Dulaney's testimony more credible than Villarreal's testimony. Issues One and Two are overruled.

IV. *Extraneous Offense Evidence*

The State was allowed to introduce evidence that, shortly before the lake incident, Villarreal raped E.D. Villarreal argues that the trial court erred when it allowed this testimony and that the trial court failed to properly instruct the jury on the permissible use of extraneous offense evidence. We review the trial court's ruling on the admissibility of evidence under an abuse of discretion standard. *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). This standard requires that we uphold a trial court's admissibility decision when it is within the zone of reasonable disagreement. *Id.*

Evidence of other crimes, wrongs, or bad acts is not admissible for the purpose of showing that the person acted in conformity therewith. TEX. R. EVID. 404(b). However, this evidence may be admissible when it is relevant to a noncharacter conformity fact of consequence such as intent, motive, identity, opportunity, preparation, plan, knowledge, or absence of mistake or accident. *Powell*, 63 S.W.3d at 438. Evidence of extraneous offenses or prior bad acts may also be admissible to rebut a defensive theory. *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003). Admissibility of evidence hinges on the relevancy of the evidence to a fact of consequence in the case. *Rankin v. State*, 974 S.W.2d 707, 709 (Tex. Crim. App. 1996). Other crimes, wrongs, or bad acts have noncharacter conformity relevance where they logically serve to make less probable defensive evidence that undermines an elemental fact. *Powell*, 63 S.W.3d at 438.

The trial court considered the admissibility of E.D.'s testimony during a hearing outside the jury's presence. E.D. was called as a witness and testified that she and Villarreal had a relationship

in the summer of 2005 but that she had called it off because of her parents. On July 29, 2005, she got a call on her cell phone from Villarreal at 2 a.m. He was staying with a friend who lived across the street from her, and he wanted her to come over to talk. She went across the street and lay down and cuddled with Villarreal in his bed. She started to fall asleep and remembered waking up, being slid down to the end of the bed, and having her shorts pulled off. Villarreal pinned her down and raped her. She told him "no" repeatedly, but he would not stop. She eventually escaped and ran home.

The trial court ruled that E.D.'s testimony was admissible to rebut Villarreal's defensive theory and that its probative value outweighed its unfair prejudice.[2] The trial court advised counsel that it would provide the jury with a limiting instruction and read its proposed instruction. Villarreal told the trial court that he had no objection to the form of that instruction. When E.D. was called as a witness, the trial court – without objection – gave the proposed limiting instruction. Villarreal's contention that the trial court failed to correctly instruct the jury has not been preserved. Issue Four is overruled.

The general rule is that evidence of extraneous offenses is inadmissible. *See Daggett v. State*, 187 S.W.3d 444, 451 (Tex. Crim. App. 2005). The risk this evidence poses is that, even though it has some probative value because the defendant is forced to defend himself against uncharged crimes as well as the charged offense, the jury could convict him based upon his bad character rather than proof of the crime alleged. *Id*. at 451.

There are exceptions to the general rule. For example, it is admissible if relevant to a fact of consequence apart from its tendency to show conduct in conformity with character. *Casey v.*

---

[2]The trial court ruled that it was admissible because:

> It appears to me that there are the three bases; that is, as I've already stated, I've allowed to rebut a defensive theory that the defendant did not use duress or force. The issue is – all of this is wrapped up in the defendant's intent. So whether that should be the idea of intent or not and then the issue earlier about the absence of mistake. . . . It's not that he's claiming that he mistakenly or inadvertently touched her breast, but there would be – there's certainly this question about when does no mean no. Does he really believe that no in this case meant yes or not? And so does no mean no to the witness's understanding? Was there a mutual mistake in that – was there a mutual lack of understanding between the alleged victim, [J.B.], and the defendant or not? Or was this something he knew that she really did intend to – to say no and mean no or not.

6

*State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).[3]  The State argues that the extraneous offense evidence was admissible to show intent and to rebut Villarreal's affirmative defense.  In essence, the State argues that it was admissible to show that Villarreal knew what "no" meant in this context and that he intentionally disregarded J.B.'s pleas.

Villarreal testified that their encounter was consensual.  He admitted that she said "no" but described it as a playful remark.  Implicit within Villarreal's testimony is the contention that, if J.B. had really meant no, he would have stopped.  E.D.'s testimony is relevant to rebut that contention because it evidences that, shortly before this incident, he did not stop in response to an unambiguous "no."  The trial court, therefore, did not abuse its discretion when it found that E.D.'s testimony was admissible under Rule 404(b).[4]  Issue Three is overruled.

## V.  *Juror Dismissal*

The State called E.D.'s mother as a witness during its extraneous offense presentation.  She described the changes in her daughter's behavior after the incident, the medical testing that was performed to determine what was wrong, and E.D.'s subsequent disclosure that Villarreal had raped her.  E.D.'s mother also testified that she and her daughter had been in counseling ever since.  After the State rested, a juror advised the trial court that he recognized E.D.'s mother.  The juror advised the court that he did not recognize her name during voir dire but that, when she testified, he recognized her as someone who attended his church.  The juror stated that his only contact with E.D.'s family had been after his heart surgery earlier in the year.  E.D.'s father called and asked about his condition.  The juror told the court that this would not affect his ability to be a juror, and neither side objected to his continued service.  The trial court admonished him to remain impartial and to not discuss his relationship with E.D.'s family with any of the other jurors.

Villarreal argues that the trial court erred by not dismissing this juror and granting a mistrial.  Villarreal, however, did not object to this juror or request a mistrial.  Consequently, nothing has been preserved for our review.  TEX. R. APP. P. 33.1(a).  Moreover, given the juror's limited connection

---

[3]The permissible purposes of this evidence include proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  Rule 404(b).

[4]*Cf. Rubio v. State*, 607 S.W.2d 498, 501 (Tex. Crim. App. 1980) (when the defensive theory of consent is raised in a prosecution for sexual assault, the defendant places his intent to commit sexual assault at issue).

with the family, the trial court did not err by accepting his statement that it would not affect his ability to be a juror. Issue Five is overruled.

## VI. *Holding*

The judgment of the trial court is affirmed.


RICK STRANGE

JUSTICE


September 17, 2009

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.