Opinion filed September 17, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed September
17, 2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                  ___________

 

                                                          No. 11-07-00284-CR 

                                           __________

 

                                  PANCHO VILLARREAL, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                          On
Appeal from the 35th District Court

 

                                                          Brown
County, Texas

 

                                                Trial
Court Cause No. CR18-196

 



 

                                              M
E M O R A N D U M   O P I N I O N

 

 The
jury convicted Pancho Villarreal of indecency with a child and assessed his
punishment at confinement for ten years.  Following the jury=s recommendation, the trial
court suspended the imposition of the sentence and placed appellant on
community supervision for ten years.  We affirm.

                                                             I. 
Background Facts








On
September 11, 2005, Villarreal, fifteen-year-old J.B., and several friends went
to the lake.  J.B. and Villarreal were Atalking.@  The evidence indicates
that this was an informal relationship B 
similar to, but not as serious as, dating.  The group started drinking, and
J.B. became intoxicated.  She and Villarreal went swimming and were separated
from the remainder of the group.  They started kissing.  Villarreal touched her
breasts with his hand.  J.B. told Villarreal no, but he kept touching and
kissing her.

Officer
David Dulaney, with the Lake Brownwood Lake Patrol, was on duty September 11.  He
saw a group of juveniles congregated between the dam and the public docks.  He
drove to that area and walked to a position near the group.  He heard someone
say A[p]our me another
shot@ and, because he
believed underage kids might be drinking, moved to a position where he could
see everyone.  He heard a young girl say that she did not Awant to do anything naughty@ and Astop.@  He saw J.B. lying on a
rock on her back partially submerged in the water.  Villarreal was sitting over
her, and they were kissing.  Villarreal was touching her breasts.  J.B. told
him to stop and asked for her friend.  Villarreal told her that the friend was
close by and could see her.  Villarreal kept J.B. on the rock and kept her from
leaving.  Villarreal=s
hands went underwater while he was kissing J.B.  He brought her bathing suit
bottom up and put it on the rock above her head.  J.B. told him to stop and
asked where her bathing suit was.  Officer Dulaney was concerned that a sexual
assault might be in progress, and he started toward the water.  When he
arrived, Villarreal had his swimming trunks off.

Officer
Dulaney told J.B. and Villarreal to move to another area so that they could get
out of the water.  J.B. attempted to put her bikini bottom back on but nearly
drowned because she was so intoxicated.  Eventually, she needed assistance
getting out of the water.  Officer Dulaney took everyone to his patrol unit. 
He had to carry J.B. and was worried that she might be suffering from alcohol
poisoning.  He issued the minors tickets, arrested Villarreal for attempted
sexual assault, and arrested an eighteen-year-old girl for an alcohol-related
charge.  Villarreal was ultimately indicted for indecency with a child.

                                                                       II. 
Issues








Villarreal
challenges his conviction with five issues.  Villarreal argues that the
evidence was legally and factually insufficient to support the jury=s rejection of his affirmative
defense and that this defense was established as a matter of law.  Villarreal
contends that the trial court erred by allowing the State to present evidence
of an extraneous offense, that the court failed to correctly instruct the jury
on the permissible use of this evidence, and that the trial court erred by
failing to dismiss a juror and grant a mistrial after it was discovered that
the juror knew one of the State=s
witnesses.

                                                     III. 
Sufficiency of the Evidence

The
State alleged that Villarreal committed the offense of indecency with a child
by touching J.B.=s
breasts with the intent to arouse or gratify his sexual desire.  Villarreal
does not dispute this allegation on appeal but contends that he established an
affirmative defense as a matter of law or, alternatively, that the evidence was
legally or factually insufficient to support the jury=s rejection of his affirmative defense.  Tex. Penal Code Ann. ' 21.11(b) (Vernon 2003)
provides that it is an affirmative defense to a prosecution for indecency with
a child if the defendant:

(1)
was not more than three years older than the victim and of the opposite sex;

 

(2)
did not use duress, force, or a threat against the victim at the time of the
offense; and

 

(3)
at the time of the offense:

 

(A)
was not required under Chapter 62, Code of Criminal Procedure, to register for
life as a sex offender; or

 

(B)
was not a person who under Chapter 62 had a reportable conviction or
adjudication for an offense under this section.

 

Villarreal was
within three years of J.B.=s
age, they were of the opposite sex, he was not required to register as a sex
offender, and he had no reportable conviction or adjudication for an offense
under Section 21.11(b).  The issue is whether he used duress, force, or a
threat.

When
conducting a legal sufficiency review of the jury=s
rejection of an affirmative defense, we examine the evidence in the light most
favorable to the jury=s
rejection and reverse only if the evidence conclusively establishes the
opposite.  Ballard v. State, 161 S.W.3d 269, 272 (Tex. App.CTexarkana 2005), aff=d, 193 S.W.3d 916 (Tex.
Crim. App. 2006).  In conducting a factual sufficiency review, we review all of
the evidence in a neutral light and determine whether the rejection of the
affirmative defense is so against the great weight and preponderance of the evidence
as to be manifestly unjust.  Clark v. State, 190 S.W.3d 59, 63 (Tex.
App.CAmarillo 2005, no
pet.).








J.B.
testified that Villarreal touched her breasts after she told him that she did
not want to do anything.  She also testified that she screamed Ano@ once and that she told Villarreal to Astop it.@  Her testimony was
confirmed by Officer Dulaney.  He heard her say no and stop, and he saw
Villarreal continuing to touch J.B.=s
breasts and restrain her when she attempted to leave.  If their testimony is
believed, this is legally sufficient evidence.  We recognize that J.B.
testified that Villarreal did not injure her physically, that she was not
afraid of him, and that he did not threaten her.  This is relevant to
Villarreal=s affirmative
defense, but it does not establish it as a matter of law because, even though
Villarreal did not use extreme force or duress, the jury could reasonably
conclude that he forced her to stay on the rock while he continued fondling her
in spite of her requests and her attempt to leave. 

The
evidence is also factually sufficient.[1]  Villarreal
vigorously challenged J.B.=s
credibility.  Because of the amount of alcohol she consumed, her memory of the
incident was limited.  She admitted lying to Officer Dulaney when he came by
her house three weeks after the event by telling him that she could not
remember anything even though she could and that she did not know that there
was vodka in her soft drink when she did.  She testified that she lied because
her father was in the room at the time.  Even though J.B. was only fifteen feet
away from her friends at the time of the incident, they did not hear her
scream.  Officer Dulaney testified that J.B.=s
friends were close enough that at least one should have heard her scream. 
Instead, J.B.=s
friends described her as happy and testified that Villarreal and J.B. were
behaving like a couple.  One friend heard J.B. tell Villarreal Ano@ while Villarreal was kissing her on the
neck.  She did so with a smile, and the friend did not believe that J.B. really
meant Ano.@  This friend was surprised
when she was subpoenaed for trial because she never suspected that anything had
happened between J.B. and Villarreal.  Finally, Villarreal points to J.B.=s admission that, in spite
of her allegation, they remained friends after this incident.








Villarreal
testified and controverted J.B.=s
testimony.  He denied using force, duress, a threat, or intimidation. 
Villarreal testified that he and J.B. had made out before and that she had
placed her hand under his clothes.  He admitted touching her breasts at the
lake but contended that he did so with her consent.  J.B. did say Ano,@ but she did so playfully and did not really
mean Ano.@  He helped her on the rock
and kept her from swimming away to a friend because he was concerned for her
safety.  Villarreal felt that J.B. was too intoxicated to be swimming.  He
claimed that she did not push him away, did not scream, and did not try to
fight him off.  He also testified that they kept seeing each other after this
incident.

The
jury was responsible for resolving the conflicting testimony.  There is no
dispute that Villarreal continued touching J.B. after she told him Ano@ and that he restrained her when she attempted
to leave.  Whether Ano@ really meant Ano@ in this incidence and whether his motive for
restraining J.B. was laudable or iniquitous are inherently fact questions.  The
jury could reasonably find J.B.=s
and Officer Dulaney=s
testimony more credible than Villarreal=s
testimony.  Issues One and Two are overruled.

                                                   IV.
Extraneous Offense Evidence 

The
State was allowed to introduce evidence that, shortly before the lake incident,
Villarreal raped E.D.  Villarreal argues that the trial court erred when it
allowed this testimony and that the trial court failed to properly instruct the
jury on the permissible use of extraneous offense evidence.  We review the
trial court=s ruling
on the admissibility of evidence under an abuse of discretion standard.  Powell
v. State, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001).  This standard
requires that we uphold a trial court=s
admissibility decision when it is within the zone of reasonable disagreement.  Id.


Evidence
of other crimes, wrongs, or bad acts is not admissible for the purpose of
showing that the person acted in conformity therewith.  Tex. R. Evid. 404(b).  However, this evidence may be
admissible when it is relevant to a noncharacter conformity fact of consequence
such as intent, motive, identity, opportunity, preparation, plan, knowledge, or
absence of mistake or accident.  Powell, 63 S.W.3d at 438.  Evidence of
extraneous offenses or prior bad acts may also be admissible to rebut a
defensive theory.  Moses v. State, 105 S.W.3d 622, 626 (Tex. Crim. App.
2003).  Admissibility of evidence hinges on the relevancy of the evidence to a
fact of consequence in the case.  Rankin v. State, 974 S.W.2d 707, 709
(Tex. Crim. App. 1996).  Other crimes, wrongs, or bad acts have noncharacter
conformity relevance where they logically serve to make less probable defensive
evidence that undermines an elemental fact.  Powell, 63 S.W.3d at 438. 








 The
trial court considered the admissibility of E.D.=s
testimony during a hearing outside the jury=s
presence.  E.D. was called as a witness and testified that she and Villarreal
had a relationship in the summer of 2005 but that she had called it off because
of her parents.  On July 29, 2005, she got a call on her cell phone from
Villarreal at 2 a.m.  He was staying with a friend who lived across the street
from her, and he wanted her to come over to talk.  She went across the street
and lay down and cuddled with Villarreal in his bed.  She started to fall
asleep and remembered waking up, being slid down to the end of the bed, and
having her shorts pulled off.  Villarreal pinned her down and raped her.  She
told him Ano@ repeatedly, but he would
not stop.  She eventually escaped and ran home.

The
trial court ruled that E.D.=s
testimony was admissible to rebut Villarreal=s
defensive theory and that its probative value outweighed its unfair prejudice.[2] 
The trial court advised counsel that it would provide the jury with a limiting
instruction and read its proposed instruction.  Villarreal told the trial court
that he had no objection to the form of that instruction.  When E.D. was called
as a witness, the trial court B
without objection B
gave the proposed limiting instruction.  Villarreal=s contention that the trial court failed to
correctly instruct the jury has not been preserved.  Issue Four is overruled.

The
general rule is that evidence of extraneous offenses is inadmissible.  See
Daggett v. State, 187 S.W.3d 444, 451 (Tex. Crim. App. 2005).  The risk
this evidence poses is that, even though it has some probative value because
the defendant is forced to defend himself against uncharged crimes as well as
the charged offense, the jury could convict him based upon his bad character
rather than proof of the crime alleged.  Id. at 451.








There
are exceptions to the general rule.  For example, it is admissible if relevant
to a fact of consequence apart from its tendency to show conduct in conformity
with character.  Casey v. State, 215 S.W.3d 870, 879 (Tex. Crim. App.
2007).[3]  The State
argues that the extraneous offense evidence was admissible to show intent and
to rebut Villarreal=s
affirmative defense.  In essence, the State argues that it was admissible to
show that Villarreal knew what Ano@ meant in this context and
that he intentionally disregarded J.B.=s
pleas.

Villarreal
testified that their encounter was consensual.  He admitted that she said Ano@ but described it as a playful remark. 
Implicit within Villarreal=s
testimony is the contention that, if J.B. had really meant no, he would have
stopped.  E.D.=s
testimony is relevant to rebut that contention because it evidences that,
shortly before this incident, he did not stop in response to an unambiguous Ano.@  The trial court, therefore, did not abuse
its discretion when it found that E.D.=s
testimony was admissible under Rule 404(b).[4] 
Issue Three is overruled.

                                                               V. 
Juror Dismissal

The
State called E.D.=s
mother as a witness during its extraneous offense presentation.  She described
the changes in her daughter=s
behavior after the incident, the medical testing that was performed to
determine what was wrong, and E.D.=s
subsequent disclosure that Villarreal had raped her.  E.D.=s mother also testified
that she and her daughter had been in counseling ever since.  After the State
rested, a juror advised the trial court that he recognized E.D.=s mother.  The juror
advised the court that he did not recognize her name during voir dire but that,
when she testified, he recognized her as someone who attended his church.  The
juror stated that his only contact with E.D.=s
family had been after his heart surgery earlier in the year.  E.D.=s father called and asked
about his condition.  The juror told the court that this would not affect his
ability to be a juror, and neither side objected to his continued service.  The
trial court admonished him to remain impartial and to not discuss his relationship
with E.D.=s family
with any of the other jurors.








Villarreal
argues that the trial court erred by not dismissing this juror and granting a
mistrial.  Villarreal, however, did not object to this juror or request a
mistrial.  Consequently, nothing has been preserved for our review.  Tex. R. App. P. 33.1(a).  Moreover,
given the juror=s
limited connection with the family, the trial court did not err by accepting
his statement that it would not affect his ability to be a juror.  Issue Five
is overruled.

                                                        VI. 
Holding 

 
The judgment of the trial court is affirmed.

 

 

RICK STRANGE

JUSTICE

 

September 17,
2009

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









     [1]A factual
sufficiency review requires consideration of all of the evidence in a neutral
light.  Clark, 190 S.W.3d at 63.  But in deference to Villarreal=s challenge to the extraneous offense evidence, we are
not including that in our review.





     [2]The trial court
ruled that it was admissible because:

 

It appears to me that there are the three bases; that is, as I=ve already stated, I=ve
allowed to rebut a defensive theory that the defendant did not use duress or
force.  The issue is B all of this is wrapped up in the defendant=s intent.  So whether that should be the idea of intent
or not and then the issue earlier about the absence of mistake. . . . It=s not that he=s
claiming that he mistakenly or inadvertently touched her breast, but there
would be B there=s certainly this
question about when does no mean no.  Does he really believe that no in this
case meant yes or not?  And so does no mean no to the witness=s understanding?  Was there a mutual mistake in that B was there a mutual lack of understanding between the
alleged victim, [J.B.], and the defendant or not?  Or was this something he
knew that she really did intend to B to
say no and mean no or not.





     [3]The permissible
purposes of this evidence include proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident. 
Rule 404(b).





     [4]Cf. Rubio v.
State, 607 S.W.2d 498, 501 (Tex. Crim. App. 1980) (when the defensive
theory of consent is raised in a prosecution for sexual assault, the defendant
places his intent to commit sexual assault at issue).