# NOS. 12-13-00043-CR
## 12-13-00044-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DONALD CHRISTOPHER HERNANDEZ,* *APPELLANT* | § | *APPEAL FROM THE 411TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *TRINITY COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Donald Christopher Hernandez appeals his convictions for aggravated kidnapping and sexual assault, for which he was sentenced to imprisonment for forty years and twenty years respectively. In one issue, Appellant argues that the evidence is legally insufficient to support the jury's rejection of his affirmative defense that he voluntarily released his victim in a safe place. We affirm.

### BACKGROUND

Appellant was estranged from his wife of six years (C.H.), who had moved with their children to Houston, Texas. On March 11, 2012, C.H. drove to Appellant's house in Trinity, Texas. Appellant and C.H. had two young children, who were at Appellant's house when C.H. arrived. The purpose of C.H.'s visit was to get money from Appellant to make her car payment. Appellant lured C.H. into the master bedroom, locked the door, took her phone, and ordered her to remove her clothes. He then bound her to a chair using plastic ties.

During the next week, Appellant struck C.H. on the head repeatedly with a baseball bat.[1] Further, he attached the cord from an electric blanket to her inner thighs and shocked her

---

[1] During the ensuing period of abuse, Appellant and C.H.'s children were in the house.

repeatedly. Further still, Appellant forced her to shave all of the hair off her body. At night, he tied her to the bed. Moreover, he forced her to place a phone call to cause her car to be repossessed. Even while he removed her belongings from the car, he used a remote control to shock her with the electric blanket wiring. Later, Appellant put a wet cloth on C.H.'s shaved head and touched the electric wires to the cloth, causing her so much pain that she nearly lost consciousness.

During this time, C.H. received a text from a coworker inquiring about her whereabouts. When Appellant saw the text, he became enraged and accused C.H. of having an affair. Thereafter, Appellant forced her to have sexual intercourse with him and, further, sexually assaulted her vaginally and anally with a flashlight.

Appellant threatened to hurt C.H. more if she called for help. C.H. stated that she believed if she had called 9-1-1, Appellant probably would have killed her. Indeed, Appellant often told her that if she tried to run, he would catch her and kill her. The door knobs in the house were reversed; she could not leave the house without a key. Further, the windows of the room in which she was confined were covered with plywood. C.H. tried to devise an escape plan. But she was unfamiliar with the house and did not know how many doors she would have to breach to attain freedom.[2] Furthermore, the fact that she was forced to remain naked caused her concern about the viability of any escape plan. Moreover, Appellant feared what would happen if Appellant foiled any escape attempt.

Appellant conversed with C.H. in an attempt to foster reconciliation. Later, under duress, C.H. wrote out a statement indicating that she would reconcile with Appellant and they again would be a family.

C.H.'s family reported to police that she was missing. In response, Trinity police officers repeatedly went to Appellant's house to determine if C.H. might be there. Appellant had a camera at the front door connected to a television in the master bedroom. When the police came to Appellant's house, he ordered C.H. and the children to be quiet until they left. C.H. said that even though she saw the police on Appellant's surveillance system, she was too frightened to call for help.

---

[2] C.H. testified that Appellant's dwelling was a single wide mobile home with additional structures attached to its exterior walls.

After a week, Appellant decided to move C.H. to his mother's house in Houston. In the wee hours of the night, Appellant drove C.H. and the children to Houston. And even though they stopped at a McDonald's restaurant during the journey, C.H., frightened of the handheld Taser Appellant had and afraid to leave the children with Appellant, did not flee.

The group arrived at Appellant's mother's house at approximately 3:00 a.m. Appellant's stepfather was present, and Appellant's brother and a family friend also stopped by the house during the following day. C.H. did not tell Appellant's family of her week-long trauma because she was extremely distrustful of Appellant's mother. When Appellant's mother returned from work, she, Appellant, C.H., and the children drove back to Trinity to get her apartment keys. C.H., the children, and Appellant's mother rode in one car, while Appellant followed in his own car.

Appellant remained in Trinity, but C.H. returned to Houston with his mother to retrieve some belongings from her apartment. During the drive, C.H. told Appellant's mother about the horrors to which Appellant had subjected her. Rather than offering to help, Appellant's mother kept driving and told C.H. "not to put . . . [Appellant] in jail."

Having realized Appellant's mother would not help her, C.H. decided she would attempt to escape once she was at her apartment. When they arrived there, C.H. saw a note on the refrigerator from her sister asking C.H. to call her because everyone was looking for her. In response, C.H. called her sister, who immediately came to the apartment. At that point, C.H. called the police. While C.H. was transported to a Houston hospital for treatment for her injuries, police went to Appellant's house in Trinity and arrested him.

Appellant was charged by separate indictments with aggravated kidnapping and sexual assault. He pleaded "not guilty" to each charge, and the matter proceeded to a jury trial. Ultimately, the jury found Appellant "guilty" as charged in each instance. Following a trial on punishment, the jury assessed Appellant's punishment at imprisonment for forty years for aggravated kidnapping and twenty years for sexual assault. The trial court sentenced Appellant accordingly, and this appeal followed.

In his sole issue, Appellant argues that the evidence is legally insufficient to support the jury's rejection of his affirmative defense to the allegations of aggravated kidnapping that he voluntarily released C.H. in a safe place.[3]

**Standard of Review**

The constitutional standard of review applies to the elements of an offense that the state must prove beyond a reasonable doubt, but it does not apply to elements of an affirmative defense that the defendant must prove by a preponderance of the evidence. ***Brooks v. State***, 323 S.W.3d 893, 924 n.67 (Cochran, J., concurring); ***Matlock***, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). The standard of review for the legal sufficiency of the evidence to support an adverse finding on an affirmative defense is as follows:

> When an appellant asserts that there is no evidence to support an adverse finding on which [he had] the burden of proof, we construe the issue as an assertion that the contrary was established as a matter of law. We first search the record for evidence favorable to the finding, disregarding all contrary evidence *unless a reasonable factfinder could not*. If we find no evidence supporting the finding, we then determine whether the contrary was established as a matter of law.

***Matlock***, 392 S.W.3d at 669 (adopting the legal sufficiency standard of review as modified in ***City of Keller v Wilson***, 168 S.W.3d 802, 827 (Tex. 2005)). But in applying this standard, we are aware that "[t]he final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." ***Id***. at 669 n.19 (quoting ***City of Keller***, 168 S.W.3d at 827).

In applying the standard to this case, our first step is to look for more than a mere scintilla of evidence supporting the jury's implied finding that Appellant did not voluntarily release C.H. in a safe place. *See* ***Matlock***, 392 S.W.3d at 669; *see also* ***Burns v. Rochon***, 190 S.W.3d 263, 267 (Tex. App.–Houston [1st Dist.] 2006, no pet.) ("More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence."). In doing so, we must disregard all evidence that Appellant voluntarily released C.H. in a safe place unless a reasonable fact finder could not do so. *See* ***Matlock***, 392 S.W.3d at 669; *see generally* ***City of Keller v. Wilson***, 168 S.W.3d 802 (Tex. 2005). If no evidence supports the jury's finding that Appellant did not voluntarily release C.H.

---

[3] Appellant has not raised any issue pertaining to his sexual assault conviction.

4

in a safe place, then in the second step, we search the record to see if he established, as a matter of law, that he did voluntarily release her in a safe place. *See id.*

In this review, jurors are the sole judges of the credibility of the witnesses and the weight to be given their testimony; reviewing courts cannot impose their opinions to the contrary. *City of Keller*, 168 S.W.3d at 819. But the jury's decisions regarding credibility must be reasonable. *Id*. at 820. "Jurors cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted." *Id*. The phrase "could have been readily controverted" means the testimony at issue is of a nature that can be effectively countered by opposing evidence.[4] *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012). Moreover, jurors are not free to believe testimony that is conclusively negated by undisputed facts. *See City of Keller*, 168 S.W.3d at 820.

If the record in this case reveals evidence supporting Appellant's affirmative defense that he voluntarily released C.H. in a safe place, but that evidence was subject to a credibility assessment and was evidence that a reasonable jury was entitled to disbelieve, we will not consider that evidence in our matter-of-law assessment. *See Matlock*, 392 S.W.3d at 670. Thus, whenever reasonable jurors could decide what testimony to discard, a reviewing court must assume they did so in favor of their verdict, and disregard it in the course of a legal sufficiency review. *City of Keller*, 168 S.W.3d at 820.

A reviewing court may conclude that the evidence is legally insufficient to support the jury's rejection of a defendant's affirmative defense only if he establishes on appeal that the evidence conclusively proves his affirmative defense and "that no reasonable jury was free to think otherwise[.]" *Matlock*, 392 S.W.3d at 670. In other words, under the applicable standard, an appellant is entitled to an acquittal on appeal despite the jury's adverse finding on his affirmative defense only if the evidence conclusively establishes his affirmative defense. *Id*. A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *City of Keller*, 168 S.W.3d at 816.

---

[4] Testimony that "could have been readily controverted" does not include, for example, the statements of an interested witness concerning his own state of mind. *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012). This is because "mental workings of an individual's mind are matters about which adversaries have no knowledge or ready means of confirming or controverting." *Id*. Such statements are incontrovertible. *Id*.

**Voluntary Release of Victim in Safe Place**

At the punishment stage of an aggravated kidnapping trial, the defendant may raise the issue of whether he voluntarily released the victim in a safe place. TEX. PENAL CODE ANN. § 20.04(d) (West 2011). If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is reduced from a first degree felony to a second degree felony. *See id.*

In assessing whether Appellant voluntarily released C.H. in a safe place, we review the surrounding circumstances of the release, and will consider factors such as (1) the remoteness of the location, (2) the proximity of authorities or persons who could aid or assist, (3) the time of day, (4) climatic conditions, (5) the condition of the victim, (6) the character of the location or surrounding neighborhood, and (7) the victim's familiarity with the location or surrounding neighborhood. *Clark v. State*, 190 S.W.3d 59, 62 (Tex. App.–Amarillo 2005, no pet.).

Here, the evidence before the jury indicates that C.H. was threatened, beaten, shocked, burned, and sexually assaulted. Moreover, the record reflects that her and Appellant's children were present during the week-long ordeal. C.H. had never lived at Appellant's house in Trinity and was unfamiliar with her surroundings. Further, she was forced to remain naked most of the time, and even were she to get through the locked doors, she could not use her car to escape because it had been repossessed. And though police came to the location repeatedly, C.H. and the children were hidden from them and too fearful to cry for help.

Further still, there is no evidence that Appellant voluntarily released C.H. Rather, the evidence demonstrates that Appellant ultimately sent her with his mother in his mother's car so she could retrieve personal effects from her apartment. C.H. testified that she did not trust Appellant's mother. The evidence indicates that her mistrust was well founded because when C.H. told Appellant's mother about the abuse she had undergone at Appellant's hand, Appellant's mother's response demonstrated her unwavering loyalty to her son and her utmost concern that Appellant not he held accountable for abusing C.H. Appellant's mother never offered C.H. a safe harbor, but instead, continued to drive her to retrieve her belongings as Appellant had directed. Only when C.H. reached her apartment and had access to a telephone to call for help did she escape Appellant's and his mother's control. *See Brown v. State*, 98 S.W.3d 180, 188 (Tex. Crim. App. 2003) (narrowly construing the term "voluntary release" to mean that rescue by police or escape by victim will not reduce punishment level of the offense).

Based on our review of the record, we hold that there is legally sufficient evidence to support the jury's finding that Appellant did not voluntarily release C.H. in a safe place. Appellant's sole issue is overruled.

## DISPOSITION

Having overruled Appellant's sole issue, we *affirm* the trial court's judgment.

**SAM GRIFFITH**
Justice

Opinion delivered July 31, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 31, 2014**

**NO. 12-13-00043-CR**

**DONALD CHRISTOPHER HERNANDEZ,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 411th District Court

of Trinity County, Texas (Tr.Ct.No. 9946-A)

　　　　　THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

　　　　　It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

　　　　　Sam Griffith, Justice.
　　　　　*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JULY 31, 2014**

**NO. 12-13-00044-CR**

**DONALD CHRISTOPHER HERNANDEZ,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 411th District Court

of Trinity County, Texas (Tr.Ct.No. 9952-A)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Sam Griffith, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*